<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENESIS LABORATORY MANAGEMENT LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED HEALTH GROUP, INC. et al.<br><br>*Defendants.* | Case No. 21cv12057 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Genesis Laboratory Management LLC ("Plaintiff") alleges that Defendants UnitedHealth Group, Inc., United Healthcare Services, Inc., and Oxford Health Plans, Inc. (collectively, "Defendants") failed to reimburse Plaintiff for COVID-19, and other, testing services provided to Defendants' insureds, plan members, and beneficiaries. Defendants move to dismiss Plaintiff's six-count Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.E. 31. The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons set forth below, Defendants' motion will be **GRANTED** in part and **DENIED** in part.

**I.     BACKGROUND**[1]

Plaintiff is a New Jersey-based molecular diagnostic and anatomic pathology laboratory offering testing services nationwide. *See* D.E. 1 ("Compl.") ¶¶ 13-14. Defendants issue and administer insurance contracts and health benefit plans to insureds, plan members, and beneficiaries in New Jersey. *Id.* ¶ 15. Plaintiff does not participate in Defendants' health benefit

---

[1] The facts in this section are taken from the well-pled allegations in the Complaint, which the Court presumes to be true for purposes of resolving the instant motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

plans, nor does it have a contract with Defendants. *Id.* ¶ 16. When Plaintiff does provide services to Defendants' insureds, plan members, and beneficiaries, it then submits reimbursement claims to Defendants. *Id.* Defendants reimburse service providers, like Plaintiff, for services provided to individuals covered by one of Defendants' health benefit plans; those reimbursements are funded by either Defendants' own assets (on fully insured plans) or the assets of the relevant plan (on self-funded plans). *Id.* ¶ 15.

One type of claim Plaintiff submits for reimbursement is for COVID-19 diagnostic testing and related testing. *Id.* ¶ 16. Plaintiff has provided COVID-19 testing services to over 51,000 individuals who are members or beneficiaries of Defendants' health benefit plans. *Id.* ¶ 18. In mid-April 2020, Plaintiff raised its COVID-19 testing services rate from $256.65 to $513.00 per test. *Id.* ¶ 27.

Between March 2020 and May 2020, Defendants were fully reimbursing Plaintiff for its COVID-19 testing services, but around June 2020, Defendants began withholding some or all payments on reimbursement claims that Plaintiff submitted for COVID-19 testing services and certain other unrelated testing services. *Id.* ¶¶ 33, 38. Defendants requested that Plaintiff produce certain clinical and operational documentation. *Id.* ¶¶ 34-36. Defendants also denied payment on certain reimbursement claims based on their determination that a "place of service" ("POS") code on these claims was incorrect. *Id.* ¶ 39.

Plaintiff then filed a six-count Complaint against Defendants alleging: (1) violation of the Families First Coronavirus Response Act ("FFCRA")[2] and the Coronavirus Aid, Relief, and Economic Security ("CARES") Act,[3] *id.* ¶¶ 43-52; (2) breach of implied contract, *id.* ¶¶ 53-62; (3)

---

[2] Pub L. 116-127, § 6001, 134 Stat. 178, 201 (2020).
[3] Pub. L. 116-136, § 3202, 134 Stat. 281, 367 (2020).

2

breach of the covenant of good faith and fair dealing, *id.* ¶¶ 63-67; (4) unjust enrichment and quantum meruit, *id.* ¶¶ 68-74; (5) promissory estoppel, *id.* ¶¶ 75-80; and (6) violations of New Jersey's Healthcare Information networks and Technologies ("HINT") Act and the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), *id.* ¶¶ 81-87. Defendants moved to dismiss Plaintiff's Complaint. D.E. 31-1 ("Mot."). Plaintiff filed an opposition. D.E. 32 ("Opp'n"). Defendants filed a reply. D.E. 33 ("Reply"). Being fully-briefed, the Court now decides Defendants' motion to dismiss.

## II.      LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III.  DISCUSSION

### A.  Count One Fails as a Matter of Law

Plaintiff alleges that Defendants violated the FFCRA and the CARES Act by failing to reimburse Plaintiff for the services it provided to Defendants' insureds, plan members, and beneficiaries.  *See* Compl. ¶¶ 43-51.  Defendants contend that there is no express or implied private right of action under the FFCRA or the CARES Act.  *See* Mot. at 6.  Plaintiff does not refute that there is no express private right of action, but instead, argues that it has an implied private right of action.  *See* Opp'n at 10-15.  In accordance with its sister courts' conclusions on the same issue,[4] the Court agrees with Defendants.

In response to the COVID-19 pandemic, Congress passed the FFCRA and the CARES Act, which requires group health insurance plans to cover the costs of SARS-CoV-2 tests at no cost to patients.  Section 6001 of the FFCRA states, in relevant part:

> (a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services furnished during any portion of the emergency period . . . beginning on or after the date of the enactment of this Act:
>
> (1) In vitro diagnostic products . . . for the detection of SARS-CoV-2 or the diagnosis of the virus that causes COVID-19 that are approved, cleared, or authorized . . . and the administration of such in vitro diagnostic products. . . .

---

[4] *See, e.g.*, *Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, 2022 U.S. Dist. LEXIS 43351 (D. Conn. Mar. 11, 2022); *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 2022 U.S. Dist. LEXIS 111620 (N.D. Cal. June 23, 2022); *GS Labs, Inc. v. Medica Ins. Co.*, 2022 U.S. Dist. LEXIS 169307 (D. Minn. Sept. 20, 2022); *Diagnostic Affiliates of Ne. Hou v. Aetna, Inc.*, 2023 U.S. Dist. LEXIS 21817 (S.D. Tex. Feb. 1, 2023).

> (2) Items and services furnished to an individual during health care provider office visits (which term in this paragraph includes in-person visits and telehealth visits), urgent care center visits, and emergency room visits that result in an order for or administration of an in vitro diagnostic product described in paragraph (1), but only to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product.
>
> (b) ENFORCEMENT.—The provisions of subsection (a) shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans and health insurance issuers offering group or individual health insurance coverage as if included in the provisions of part A of title XXVII of the Public Health Service Act, part 7 of the Employee Retirement Income Security Act of 1974, and subchapter B of chapter 100 of the Internal Revenue Code of 1986, as applicable.
>
> (c) IMPLEMENTATION.—The Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury may implement the provisions of this section through sub-regulatory guidance, program instruction or otherwise.
>
> (d) TERMS.—The terms "group health plan"; "health insurance issuer"; "group health insurance coverage" and "individual health insurance coverage" have the meanings given such terms in . . . section 733 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1191b) . . .

Section 3202 of the CARES Act states, in relevant part:

> (a) REIMBURSEMENT RATES.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116-127) with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:
> . . .
> (2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.

>   (b) REQUIREMENT TO PUBLICIZE CASH PRICE FOR DIAGNOSTIC TESTING FOR COVID-19.—
>
>   (1) IN GENERAL.—During the emergency period declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), each provider of a diagnostic test for COVID-19 shall make public the cash price for such test on a public internet website of such provider.
>
>   (2) CIVIL MONETARY PENALTIES.—The Secretary of Health and Human Services may impose a civil monetary penalty on any provider of a diagnostic test for COVID-19 that is not in compliance with paragraph (1) and has not completed a corrective action plan to comply with the requirements of such paragraph, in an amount not to exceed $300 per day that the violation is ongoing.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). To determine if Congress intended to imply a private right of action, courts consider the text and structure of the statute to "determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 288 n.7; *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009). Thus, "[a]fter *Sandoval*, the relevant inquiry for determining whether a private right of action exists appears to have two steps: (1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?" *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007). And "[o]nly if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a federal statute." *Id.*

Here, Plaintiff contends that the text and structure of the FFCRA and the CARES Act evince Congress's intent to afford "out-of-network providers who render COVID-19 diagnostic testing services" with a private right of reimbursement. *See* Opp'n at 11-12. And according to Plaintiff, it would be "illogical" for Congress to give providers a personal right to payment without also giving them a remedy to enforce that right. *See id.* at 12. However, Plaintiff does not point

to any substantive evidence that Congress intended to create a private remedy. *See Murphy*, 2022 U.S. Dist. LEXIS 43351, at *12 (finding unpersuasive the same argument raised by the plaintiff because an "assumption" that Congress intended to create a private remedy is insufficient to show actual intent); *see also GS Labs, Inc.*, 2022 U.S. Dist. LEXIS 169307, at *27 ("Even assuming the absence of an enforcement mechanism, however, the Court is not persuaded that Congress intended for a private right of action by implication. The Court is mindful of the Supreme Court's disfavor of implied rights of action, and nothing in the text or structure of the CARES Act suggests the intent to provide providers such as GS Labs with a privately enforceable remedy."). Thus, even if Congress intended to create a personal right of reimbursement for providers, like Plaintiff, through the FFCRA and the CARES Act, there is nothing in the text or structure of those acts suggesting that Congress intended to afford a privately enforceable remedy to Plaintiff. *See Murphy*, 2022 U.S. Dist. LEXIS 43351, at *12. Therefore, the Court, in line with its sister courts, finds that Plaintiff has no implied private right of action under the FFCRA and the CARES Act.

Accordingly, Count One will be dismissed with prejudice. *See Saloojas, Inc. v. Cigna Healthcare of Cal., Inc.*, 2022 U.S. Dist. LEXIS 183608, at *13 (N.D. Cal. Oct. 6, 202) (dismissing FFCRA and CARES Act claim with prejudice because amendment would be futile).

**B.    Counts Two through Six are Preempted by ERISA**

Plaintiff alleges several state law claims based on Defendants failure to fully reimburse Plaintiff for providing COVID-19, and other, testing services to Defendants' insureds, plan members, and beneficiaries. *See* Compl. ¶¶ 52-87. Defendants argue that these claims are preempted by the Employment Retirement Income Security Act ("ERISA") because they are aimed at recovering ERISA-governed benefits ("*i.e.*, reimbursement from an ERISA plan"). *See* Mot. at 10-11. Therefore, ERISA would provide the only available remedy. *See id.* Plaintiff

responds that the state law claims are not preempted by ERISA because they have neither a "reference to" nor a "connection with" any ERISA-benefit plan, since Defendants' obligation to reimburse Plaintiff is set by a separate federal law, the CARES Act. *See* Opp'n at 15. The Court agrees with Defendants.

ERISA "'provide[s] a uniform regulatory regime over employee benefit plans,' including health insurance plans." *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*, 2022 U.S. Dist. LEXIS 89593, at *4 (D.N.J. May 18, 2022) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). "Section 502(a)(1)(B) of ERISA provides that '[a] civil action may be brought…by a participant or beneficiary…to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)). Significantly, Section 514(a) of ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987). The "related to" language in "that provision has been construed broadly by courts such that any state action, either statutory or founded in state common law, that 'has a connection with or reference to' an ERISA benefit plan is preempted." *Bukuvalas v. CIGNA Corp.*, 2010 U.S. Dist. LEXIS 127873, at *13 (D.N.J. Dec. 3, 2010); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) ("suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a).") (citations omitted).

In *Open MRI*, Judge McNulty concluded that Section 6001 of the FFCRA and Section 3202 of the CARES Act impose legal requirements *on ERISA plans*. *See* 2022 U.S. Dist. LEXIS 89593, at *11-14. Judge McNulty considered whether a plaintiff is authorized to bring a suit for damages under ERISA when an insurer denies payment for COVID-19 testing. *Id.* at *8. Judge McNulty

8

reasoned that because "who" is responsible for providing coverage for COVID-19 testing under Sections 6001(a) and (d) of the FFCRA, is defined via cross-reference to ERISA, then "at the very least, [the FFCRA's] requirement of COVID-19 testing coverage is intended to interlock with ERISA." *Id.* at *8 (citing *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (courts must follow a statute's explicit definition of a term); *United States v. Davis*, 139 S. Ct. 2319, 2331 (2019) ("Usually when statutory language is obviously transplanted from other legislation, we have reason to think it brings the old soil with it." (cleaned up)); *In re Trump Ent. Resorts*, 810 F.3d 161, 167 (3d Cir. 2016) (courts "assume that Congress passed each subsequent law with full knowledge of the existing legal landscape.")).  Furthermore, by using an ERISA term of art, "group health plan," in the FFCRA, "Congress clearly conveyed that it was imposing obligations *on the plans*, not just on regulated entities in some general sense[;]" Judge McNulty emphasized that the "plan" is the "linchpin of ERISA and of the ERISA cause of action which allows an insured 'to recover benefits due to him under the terms of his plan." *Id.* at *9.

Additionally, Judge McNulty reasoned that Section 6001(b) of the FFCRA, which provides that enforcement of Section 6001(a)'s COVID-19 testing coverage requirement applies to "group health plans and health insurance issuers offering group or individual health insurance coverage as if included in [] part 7 of [ERISA,]" further demonstrates Congress's intent that the COVID-19 testing requirement be treated as an ERISA requirement. *See id.* at *10.  Thus, Judge McNulty found that the FFCRA and the CARES Act "mandate coverage of COVID-19 testing as a *benefit under an ERISA plan*." *Id.* at *13.  He then concluded that "an insured can sue *under ERISA* when an insurer denies coverage for COVID-19 testing. That is the best, most harmonious reading of these [(FFCRA, CARES Act, and ERISA)] explicitly interrelated statutes." *Id.* at *14.

9

In *Murphy*, Judge Arterton rejected the argument that the defendants' reimbursement obligation was an "independent duty" arising from the FFCRA and the CARES Act, and therefore, that the state law claim was not preempted by ERISA. 2022 U.S. Dist. LEXIS 43351, at *32. Instead, Judge Arterton concluded that the FFCRA and the CARES Act "effectively modified" the terms of ERISA plans. *Id.* at *32-33. Accordingly, Judge Arterton dismissed the plaintiffs' state law claim as preempted by ERISA. *Id.* at *33.

In line with *Open MRI* and in *Murphy*, this Court finds that Section 6001 of the FFCRA and Section 3202 of the CARES Act must be considered together with ERISA because they impose legal requirements on ERISA plans. Here, Plaintiff's opposition brief acknowledges the possibility that some of Plaintiff's reimbursement claims submitted to Defendants were for services governed by ERISA plans. Plaintiff explicitly states, "even if *some* of the claims for services *are governed by ERISA plans*…" Opp'n at 15. Despite this possibility, Plaintiff's Complaint does not distinguish between reimbursement claims submitted for services governed by ERISA plans and those not governed by ERISA plans. But this distinction is paramount to the survival of Plaintiff's state law claims because to the extent that those claims relate to ERISA plans, they are preempted by ERISA, but to the extent that those claims relate to non-ERISA plans, they are not preempted by ERISA. *See Murphy Med. Assocs., LLC v. Cigna Health*, 2022 U.S. Dist. LEXIS 189753, at *6-7 (D. Conn. Oct. 18, 2022) (granting the plaintiffs leave to amend so they could clarify that state law claims were not solely premised on ERISA plans). Therefore, as currently pled, Plaintiff's state law claims fail.

Accordingly, Counts Two through Six will be dismissed without prejudice.

### C. Caution on Group Pleading as to UnitedHealth Group, Inc.

Finally, Defendants contend that Defendant UnitedHealth Group, Inc. ("UHG") should be dismissed from this action because Plaintiff fails to allege any misconduct specifically tied to UHG. Mot. at 25. Plaintiff responds that it is entitled to discovery to elucidate each Defendants role because Plaintiff has asserted its claims against multiple defendants for concerted action. Opp'n at 30. But Plaintiff's Complaint does not explicitly allege that Defendants acted in concert. In fact, as pled, UHG's sole tie to this matter is its corporate relationship to the other Defendants. *See* Compl. ¶ 2. This does not comport with Rule 8's pleading standard because it lumps the Defendants together without asserting that they are acting in concert. *See Sheeran v. Blyth Shipholding S.A.*, 2015 U.S. Dist. LEXIS 168019, at *8 (D.N.J. Dec. 16, 2015) (noting that "group pleading" does not satisfy Rule 8, because it does not place Defendants on notice of the claims against each of them) (citations omitted). Thus, if Plaintiff takes advantage of the opportunity to amend its Complaint, then the Court cautions Plaintiff that it should not engage in "group pleading" to the extent that it can be avoided at this stage.

Accordingly, at this juncture, UHG will not be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be **GRANTED** in part and **DENIED** in part. Count One will be **DISMISSED** *with prejudice* and Counts Two through Six will be **DISMISSED** *without prejudice*. Plaintiff will have thirty (30) days to file an Amended Complaint correcting the deficiencies noted herein. An appropriate Order accompanies this Opinion.

Dated: March 6, 2023

Evelyn Padin, U.S.D.J.