# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENESIS LABORATORY MANAGEMENT LLC,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC. AND OXFORD HEALTH PLANS, INC.,<br><br>        Defendants. | Civil Case No. 2:21cv12057-EP-JSA<br><br>**AMENDED COMPLAINT**<br><br>**<u>PLAINTIFF REQUESTS A TRIAL BY JURY</u>** |

Plaintiff Genesis Laboratory Management LLC ("Plaintiff" or "Genesis"), by and through their attorneys, by way of Complaint against the Defendants United Healthcare Services, Inc. and Oxford Health Plans, Inc. (collectively "United" or "Defendants") alleges as follows:

## <u>THE PARTIES</u>

1.  Plaintiff Genesis is a limited liability company organized and existing under the laws of the State of New Jersey with its principal place of business at 1912 Highway 35, Oakhurst, New Jersey, 07755.

2.      Defendant United Healthcare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Minnetonka, Minnesota.  It is a foreign for-profit corporation operating in the State of New Jersey, and it issues health insurance and administers plans that are funded by plan sponsors in New Jersey.  United Healthcare Services, Inc. may be served with process by serving its registered agent for service CT Corporation System, 1010 Dale Street N, St. Paul, Minnesota, 55117-5603.

3.      Defendant Oxford Health Plans, Inc. ("Oxford") is incorporated in Delaware with its principal place of business at 48 Monroe Turnpike, Trumbull, Connecticut 06611.  Oxford is a foreign for-profit corporation operating in the State of New Jersey, and it issues health insurance and administers plans that are funded by plan sponsors in New Jersey.  Oxford may be served with process by serving its registered agent for service The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

4.      Defendants are in the business of issuing and administering insurance contracts and administering health benefit plans.  Many health benefit plans for which United acts as insurer and/or administrator are plans to which the Employee Retirement Income Security Act of 1974 ("ERISA") applies.  Other health benefit plans and insurance policies that United issues and/or administers are not subject to ERISA and are instead only governed by state law.  Finally, on information and

belief, some insurance contracts that United issues are both ERISA plans and insurance contracts to which state law applies.

5.      Defendants are solely in possession of the information necessary to determine which claims at issue relate to plans governed by ERISA.  Defendants' members, at the time they present for services, do not disclose whether their health benefits are governed by ERISA (and usually do not know).  Likewise, in the course of adjudicating health benefit claims, Defendants normally do not disclose which claims relate to ERISA-governed benefit plans.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this dispute under 28 U.S.C. § 1331 because this action arises under the laws of the United States.  This Court also has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) because the matter in controversy involves the enforcement of rights under ERISA.  This Court also has jurisdiction over this dispute under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and complete diversity of citizenship exists.

7.      This Court has supplemental jurisdiction over Genesis's state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged herein form part of the same case or controversy under Article III of the United States Constitution.

8.      This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in the State of New Jersey and have engaged

in the conduct herein in New Jersey targeted toward New Jersey residents, business, and/or interests.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district and because Defendants conduct a substantial amount of business in this judicial district.  In addition, many of Defendants' health plans, customers, and members can be found within this district.

## **FACTUAL ALLEGATIONS**

10.     Despite its reported earning of $20.6 billion in profits in 2022, United is failing at its obligation to cover COVID testing.  Indeed, while businesses across the country have grappled with economic loss in the wake of a global pandemic, UnitedHealth Group (which issues health insurance and administers group health plans nationally through its various wholly-owned and controlled subsidiaries, including Defendants) reported that its 2022 revenues of $324.2 billion grew $36.6 billion or 13.0% year-over-year.[1]  A New York Times article published during the COVID pandemic specifically called out United for its shockingly low reimbursement rates and failure to fully cover COVID tests, noting that the American Academy of Pediatrics and the California Medical Association have been

---

[1] *See* https://www.unitedhealthgroup.com/newsroom/2023/2023-01-13-fourth-quarter-full-year-results.html.

unable to receive satisfactory responses on these issues with United. *See* Sarah Kliff, New York Times, "Burned by Low Reimbursements, Some Doctors Stop Testing for Covid" (Feb. 3, 2021).

11.   Congress took special and extraordinary steps during the pandemic to require health plans and health insurance issuers like United to cover and pay the cost of coronavirus testing as a mechanism to fight the pandemic.  As part of these efforts, Congress prohibited health plans and health insurance issuers from imposing any prior authorization or other medical management requirements on testing for the diagnosis of COVID-19, whether obtained in- or out-of-network.  *See* FFCRA § 6001(a).  Additionally, Congress mandated that health plans and health insurance issuers like United must cover and reimburse providers for conducting COVID-19 testing and related testing and services.  These requirements apply to COVID-19 testing and related services rendered by both "in-network" and "out-of-network" providers like Genesis.  United's conduct is the antithesis of what Congress intended for health plans to do to combat COVID.

12.   At issue in this dispute is United's failure to pay or underpayment of approximately 49,424 clean claims for COVID-19 diagnostic testing that Genesis provided and continues to provide to United members and beneficiaries.  In addition to failing to reimburse Genesis for providing covered COVID testing services, United has acted in bad faith by erecting hurdles to payment without justification,

such as by making burdensome medical records requests directed to Genesis or denying claims for immaterial reasons unrelated to the medical necessity of the testing.

13.    In addition, United has underpaid or failed to pay for approximately 21,833 claims for testing services unrelated to COVID-19, including Pathology, Cytology Services, and Molecular Testing.  Moreover, United has made burdensome and unjustified medical records requests directed to Genesis unrelated to the medical necessity of these tests.

<u>**Relationship Between the Parties**</u>

14.    Genesis is a New Jersey-based independent, full-service molecular diagnostic and anatomic pathology laboratory offering an array of testing services.

15.    Genesis's laboratory is accredited by the College of American Pathologists and certified under the federal Clinical Laboratory Improvement Amendments ("CLIA") with license number 31D1103468.  Genesis is licensed to accept specimens from all 50 states.

16.    United is in the business of issuing and administering insurance contracts and administering health benefit plans, including to insureds, plan members, and beneficiaries within the State of New Jersey.  United is required to make benefit payments from its own assets (for fully insured plans) or the assets of

the relevant plan (for self-funded plans) when an individual covered by one of the plans obtains healthcare services covered by the plan.

17.     Genesis is a non-participating, or out-of-network, provider of services in that it does not have a contract with United to accept rates for the services provided to United members or beneficiaries, notwithstanding multiple attempts to become in-network with United.  Genesis submits claims to United for reimbursement of the testing services, including COVID-19 diagnostic testing and related testing, provided to United's members.   Genesis regularly appeals denials and underpayments to United.

### Genesis's Role in Fighting the COVID-19 Pandemic

18.     From the start of the COVID-19 pandemic, Genesis offered COVID-19 in vitro diagnostic testing for the detection of the virus that causes COVID-19. Genesis also later offered COVID-19 antibody testing.  Genesis began offering and focusing its resources on COVID-19 testing services as part of its commitment to combatting the COVID-19 pandemic in New Jersey and nationally.  Throughout the pandemic, Genesis offered COVID-19 testing services 24 hours per day and 7 days a week to help clinicians quickly and accurately diagnose COVID-19 and detect the presence of COVID-19 antibodies and provide patients with timely infection information.

19.    In total, from the start of the pandemic through the present, Genesis provided COVID-19-related testing services to over 170,000 patients who are members or beneficiaries of Defendants' health plans.  This number continues to grow.  Despite Defendants' failure to pay for these testing services, Genesis has never refused to treat their members.  In fact, Genesis was induced to continue performing testing services for Defendants' members because United initially paid COVID-19 testing charges during the early stages of the pandemic before it routinely stopped doing so.

20.    The testing services were medically necessary and appropriate according to recognized medical standards and standards announced by Congress and the Department of Health and Human Services.

**Federal Rules Require United to Pay**
**<u>Genesis for Out-of-Network COVID-19 Testing</u>**

21.    Based on provisions of the FFCRA and CARES Act, as discussed below, Genesis had every expectation that United would honor its obligations and reimburse Genesis for the COVID-19-related testing services provided to United's members and beneficiaries.  Genesis has been, and continues to be, harmed by United's failure to pay valid claims that Genesis submitted to United for reimbursement for services to United's members and beneficiaries.

22.    Congress intended that the required coverage of COVID testing be treated as an ERISA requirement.  In other words, the FFCRA and CARES Act

8

require that coverage of COVID-19 testing become a benefit under health plans covered by ERISA, whether expressly stated or not.  Participants and beneficiaries, as well as providers who are entitled to direct payment, can sue health plans and health plan administrators for failing to furnish this Congressionally-required plan benefit.

23.     Congress, as well as the Trump and Biden Administrations, have clarified that group health plans and health insurance issuers like Defendants must cover and reimburse COVID-19 testing and related services.  Such rules have been laid out not just in the text of the FFCRA and CARES Act, but also in a series of "Frequently Asked Questions" ("FAQs") documents issued and publicly posted by the federal Department of Health and Human Services ("HHS").  United's failure to properly reimburse Genesis for COVID-19 testing services violates these reimbursement rules, as explained in detail below.

24.     Under Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, United must provide benefits for certain COVID-19-related items and services, including COVID-19 testing, furnished beginning March 18, 2020.  United "must provide this coverage without imposing any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization, or other medical management requirements." *See* FFCRA, § 6001(a); FAQs About Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic

Security Act Implementation (hereinafter "FAQs"), Part 44, pp. 1-2 (February 26, 2021).

25.     Moreover, the FAQs clarify that plans and issuers are prohibited from imposing specific screening criteria on coverage of COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19. Thus, "[w]hen an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an 'individualized clinical assessment' and the test should be covered without cost sharing, prior authorization, or other medical management requirements."  FAQs, Part 44, pp. 2-3.

26.     The CARES Act amendments to the FFCRA specify that health plans such as United must reimburse any provider of COVID-19 diagnostic testing, whether in-network or out-of-network.  Specifically, Section 3202 of the CARES Act states that if United "does not have a negotiated rate with such provider, [United] shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website[.]"  *See* CARES Act, § 3202(a)(2), Pub. L. 116-136; *see also* 42 U.S.C. § 256b Note.

27.     United also had the opportunity, as recognized by the CARES Act, to "negotiate a rate with such provider for less than [the cash price on the website],"

*id.*, but United did not make any effort to negotiate a rate with Genesis.  To date, although it has attempted to negotiate a price on certain individual claims, United still has not attempted to negotiate any rate with Genesis for COVID testing generally.

28.    In compliance with Section 3202(b)(1) of the CARES Act, Genesis posted on its public website (https://genesislaboratory.com/pricing/) the cash price of its COVID-19 diagnostic test since March 2020.  The cash price listed by Genesis was $256.65 until mid-April 2020, when it was updated to $513.00 at the time CMS doubled the fee schedule reimbursement amount for Medicare COVID-19 testing reimbursement.

29.    Because United has not negotiated a rate with Genesis (or even attempted to do so), United is obligated to reimburse Genesis for COVID-19 testing services at a rate of $513 per test from April 15, 2020 to the present and, prior to that, at the publicly listed rate of $256.65, unless reimbursement for the type of claim at issue is adjusted by contract or by statute, which is the case for certain governmental health plan participants.

30.    Federal guidance under the FFCRA and CARES Act is also clear that United's obligation extends to a wide array of coverage and testing types. The FFCRA/CARES Act payment rules apply to "group health plans and health insurance issuers offering group or individual health insurance coverage (including

grandfathered health plans).” This definition specifically includes “both insured and self-insured group health plans,” including “private employment-based group health plans (ERISA plans), non-federal governmental plans . . . and church plans.” *See* FAQs, Part 42, Q1 (April 11, 2020).

31.     The FFCRA, the CARES Act, and ERISA are interrelated statutes. The FFCRA and the CARES Act mandate coverage of COVID-19 testing and related services as a benefit under an ERISA plan.

32.     United's reimbursement obligations also apply to all manner of in vitro COVID-19 diagnostic testing, including serological (otherwise known as “antibody”) testing, and tests administered at home through self-collection. *See* FAQs, Part 42, Q1 (April 11, 2020); FAQs, Part 43, Q4 (June 23, 2020).

33.     Based on the above provisions, there can be no debate that federal law requires United to pay for COVID-19 testing services provided by Genesis. Regulators have even warned that plans and issuers shall not attempt to “limit or eliminate other benefits . . . to offset the costs of increasing the generosity of benefits related to the diagnosis and/or treatment of COVID-19.” *See* FAQs, Part 42, Q9 (April 11, 2020).

34.     United's failure to pay approximately 49,424 claims is a clear violation of those obligations. United's actions are particularly reprehensible given the increased operational costs and burdens that Genesis has undertaken to join the State

of New Jersey in the fight against COVID-19.  Genesis remained open and tested over 700,000 patients during the heart of the pandemic, absorbing increased costs to protect patients and employees, as well as obtaining and providing test results in a timely manner (usually within 48 to 96 hours). To absorb this risk without reimbursement is the antithesis of what Congress mandated that health plans must do in the FFCRA and CARES Act as incorporated into ERISA.

### United Inappropriately Withheld Payment
### for COVID-19 Testing Services In Bad Faith

35.     In connection with the COVID-19 diagnostic testing and related testing provided to United members who received testing services at issue in this lawsuit, Genesis timely submitted claims for payment to United and billed the cash price for the relevant service publicly posted on Genesis' website, as permitted by the CARES Act.

36.     United's behavior with respect to payment for COVID testing services rendered by Genesis has been erratic and inconsistent.  United has paid the majority of claims for COVID-19 diagnostic testing and related testing that Genesis submitted for testing provided at the outset of the pandemic in March, April, and May 2020. Genesis had no reason to expect that United would begin to deny payment for testing that Genesis provided to United members and beneficiaries beginning around June 2020, but that is precisely what happened.  For testing provided from June 2020 and onward, United has been systematically denying payment for those claims, even

though Genesis's testing, billing, documentation, and other practices have been the same throughout the COVID-19 pandemic.

37.    Instead of issuing payment, United has elected to send an unreasonable number of requests for clinical records and other supporting documents for the services that Genesis provided United's members and beneficiaries.  United is demanding that Genesis produce voluminous patient treatment and other records with tight response time demands.  Genesis cannot feasibly comply with United's requests.

38.    For example, United has denied payment for a series of claims and is refusing to pay unless Genesis produces clinical and operational documentation within 30 days of United's request.  This documentation included physician orders, standing orders, laboratory requisitions, pathology reports, unspecified "correspondence", patient intake forms, patient initial/visit consultation forms, copies of CLIA certificates for 6 years, CMS-116 applications, types of equipment used for testing, reagent supply lists and invoices for 6 months, lists of reference labs used and tests designated as send-out-tests, identification and credentials for every onsite technical lab staff member, specimen and transport logs, average daily test volumes, average daily send-out test volumes, inspection and proficiency test reports, information for how each testing specimen is received, and COVID-19 testing kits used and photographs of all contents of the kits.

39.    For both COVID-related and non-COVID-related testing, Genesis does not have ready access to most of the clinical documents requested by United because it is a laboratory and not the treating provider.  Although United issues its medical records requests to Genesis, Genesis could not respond to various items in the request unless it submitted requests for these detailed clinical records to the treating provider ordering the test.  Genesis has no control over whether other providers will comply with its documentation requests (much less in the 30-day window demanded by United).  Moreover, these treating providers are often themselves within United's "network" of participating providers.  Accordingly, United – not Genesis – has far greater access to and control over the documents it seeks because the source of the documents is with United's own participating providers.

40.    Regardless of access to records, United's requests contravene the instructions in the FFCRA, CARES Act, and follow-on FAQs, which clarify that United must reimburse out-of-network laboratories like Genesis without engaging in "medical management."  It is disingenuous, not to mention illegal, for United to claim that it must review detailed clinical records to determine a patient's symptoms before covering the COVID-19 test.  Federal guidance states that, under the FFCRA and CARES Act, plans and issuers cannot "use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing" for asymptomatic patients, and they "cannot require the presence of symptoms or a

15

recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests."  FAQs, Part 44 Q1 (Feb. 26, 2021).  Congress, in enacting the FFCRA, prohibited plans and issuers from "impos[ing] any cost sharing . . . requirements or prior authorization or other medical management requirements" in connection with COVID testing.  FFCRA § 6601(a).  United's actions in withholding payment on legitimate claims for services Genesis provided and demanding an unreasonable volume of documentation are clear violations of United's FFCRA and CARES Act reimbursement obligations.

41.  United's own conduct in paying claims belies its argument that it lacks the necessary documentation to pay for COVID tests.  United is paying a much higher percentage of Genesis COVID testing claims when the dollars at issue belong to its self-funded plan customers and far fewer claims when it is United itself that is at risk for the payment.  For example, United's abusive requests and pre-payment review processes are far less prevalent when its customers' self-funded plans are involved versus fully insured plans where United's own dollars are at stake. United's tactics are not in good faith because United is simply trying to reduce its own spend rather than acting out of legitimate concern that Genesis is not properly documenting its reimbursement claims.  Otherwise, United would not be paying such a large share of the claims of its self-funded plan customers where United is acting only as administrator.  United is also engaging in aggressive records requests

and pre-payment review processes with respect to the claims unrelated to COVID-19 testing.

42.     In addition to withholding payment and demanding United produce voluminous patient documentation, United has denied claims (for both COVID testing as well as testing unrelated to COVID, including Anatomic Pathology, Cytology Services, and Molecular Testing) based on its erroneous determination that a "place of service" (POS) code on the claim is incorrect.  Regardless of United's preference for a different POS code, the presence of one POS code or the other is not material to payment and should not affect whether the claim is reimbursable.  Moreover, United's insistence of a code other than POS Code 81 is inconsistent with what other insurers require as well as industry practice.   United's position is especially unreasonable given CARES Act guidance demonstrates that United must cover all manner of diagnostic testing, regardless of where performed.  *See* FAQs, Part 43, Q4 (June 23, 2020).

43.     United's refusal to reimburse Genesis for COVID-19 testing services violates the CARES Act, terms of applicable ERISA plans, and state law.  United's abusive records requests and withholding of payment directly violate a Congressional mandate requiring health plans to reimburse in- and out-of-network COVID testing services during the pandemic.

44.     In New Jersey, United has a duty to acknowledge and promptly adjudicate claims, in addition to its duties to engage in good faith and fair dealing with regard to the implied contractual relationship that exists between Genesis and United.  United has breached these duties and Genesis has suffered damages.

45.     Genesis has attempted to engage in communications and discussions with United in an effort to resolve the issue short of litigation, including by telephone and email communications with various United employees.  Genesis also transmitted a detailed demand letter to United fully setting out its positions prior to filing suit. *See* **Exhibit A**.  Moreover, prior to filing suit, Genesis asked United if it would give Genesis the courtesy of accepting service of the complaint, but United refused, insisting that Genesis incur the cost of a private process server simply to make Genesis jump through more hoops, a strategy that United has pursued all along. United's efforts so far have only consisted of asking for delays and extensions without substantively addressing the payment issues involved.

## ERISA PLANS

46.     Some of the patients that were tested by Genesis were enrolled in United health benefit plans that were governed by ERISA.

47.     ERISA plans incorporate the obligations that Congress created under the FFCRA and the CARES Act to reimburse out-of-network laboratories like Genesis for the medically necessary COVID testing that they perform.

48.     The FFCRA and the CARES Act "mandate coverage of COVID-19 testing as a benefit under an ERISA plan." *Open MRI and Imaging of RP Vestibular Diagnostics v. Cigna*, No. 20-10345, 2022 WL 1567797, at \*6 (D.N.J. May 18, 2022).   In addition, "an insured can sue under ERISA when an insurer denies coverage for COVID-19 testing." *Id.*

49.     With respect to non-COVID services at issue in this case, many of the ERISA plans that United administers provide benefits for medically necessary services that beneficiaries receive from out-of-network providers, like Genesis.

50.     Genesis, as opposed to United, is not privy to the information that would allow it to determine whether the claims at issue relate to ERISA plans or to plans not governed by ERISA.   Among other things, Genesis, as a clinical laboratory, does not have direct contact with patients whose specimens it received orders to analyze.   Even if Genesis had had direct patient contact, patients do not normally know if their plans are ERISA-covered, and members' insurance cards normally do not reveal this information.

51.     United's denials and significant underpayments for COVID-19 and non-COVID testing, as well as unjustifiable and burdensome record requests for each claim, violate provisions of these ERISA plans (as well as incorporated obligations of FFCRA and CARES independent of the plan terms) and/or wrongfully deny benefits due under ERISA.

## ASSIGNMENT

52.     The patients who obtained lab services through Genesis normally executed assignment of benefit forms in connection with their requests to receive testing services.  The assignment agreements authorize Genesis to act as the patient's agent for purposes of obtaining payment for the services provided as well as to pursue any claims, penalties, and administrative and/or legal remedies on the patients' behalf against United.

53.     In addition, the FFCRA and the CARES Act direct all plans, including ERISA plans, not just to cover COVID-19 testing and related services, but to pay providers certain amounts for COVID-19 testing.  *See* FFCRA, § 6001(a); CARES Act, § 3202(a)(2).  By requiring direct payment, these laws have obviated the need for providers to obtain a specific assignment of ERISA benefits from patients to be entitled to seek reimbursement from the plan or to be entitled to bring an action under ERISA.

## COUNT I

## Failure to Provide Benefits Under ERISA Plans

## (As to ERISA Plan Claims)

54.     Genesis re-alleges each allegation contained above as if fully set forth herein.

55.    This is a claim to recover benefits, enforce rights, and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).

56.    Section 502 of ERISA allows a participant or beneficiary covered by a welfare benefit plan to sue to "recover benefits due . . . under the terms of his plan, to enforce rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

57.    Genesis has standing to assert the claims of United plan members against United.

58.    By engaging in United's burdensome appeal processes, Genesis has exhausted its administrative remedies under the ERISA plans at issue.  Alternatively, exhaustion of administrative remedies was not required because it was futile. Indeed, United recently instructed Genesis to stop any further submissions of COVID-19 testing claims through United's appeals process.

59.    United's conduct constitutes a breach of its ERISA plans and an abuse of discretion. Such conduct has denied Genesis benefits to which it is entitled as an assignee.  Under the terms of the plans, United members are entitled to a benefit consisting of coverage for medically necessary services and payment consistent with the plan documents and other applicable legal requirements.

60.    United's failure to pay what it was obligated to pay for the COVID-19 related testing services under the FFCRA and the CARES Act (as incorporated into

applicable ERISA plans), and pursuant to plan documents for non-COVID services, was motivated by its desire to achieve maximum profits and resulted in a direct financial benefit to United, and constitutes a conflict of interest and bad faith.

61.     United's refusal to pay Genesis for claims for medically necessary testing services rendered to United members at legally required levels should be reversed because these determinations were wrong, incorrect, improper, unlawful, not based on any evidence, an abuse of discretion, and/or arbitrary and capricious.

62.     Based on the above, Genesis demands recovery of benefits at the applicable level provided under the FFCRA and CARES Act and all other relief due pursuant to 29 U.S.C. § 1132(a)(1)(B).

## COUNT II

### Breach of Implied Contract

### (As to Non-ERISA Plan Claims)

63.     Genesis re-alleges each allegation contained above as if fully set forth at length herein.

64.     Genesis pleads this count only as to the claims related to plans not covered by ERISA.

65.     United has shown, by a course of conduct, dealings, and the circumstances surrounding the relationship, to Genesis that United would pay for the COVID testing services provided to United's members and beneficiaries.

22

66.     Accordingly, an implied contract has been created through United's course of conduct and interaction with Genesis.

67.     For example, United paid Genesis' cash price for COVID-19 testing and related services in March, April, and May 2020 because Genesis rendered valuable testing services for the benefit of United and its members.  Genesis had no reason to believe that United would reverse course and withhold payment without justification.

68.     The parties' implied contract indicated that United would pay Genesis the statutorily defined value of Genesis's services (as provided by the FFCRA and the Cares Act) for the COVID testing services provided by Genesis.

69.     Genesis rendered medically necessary testing services to the patients identified, and in doing so, Genesis reasonably expected United to properly compensate Genesis.

70.     A reasonable person in the position of United would know, or reasonably should have known, that Genesis was performing the services expecting that United would pay for them appropriately.

71.     Despite indicating to Genesis by a course of conduct, dealings and the circumstances surrounding the relationship that United would properly and timely reimburse Genesis for the cash price of testing services, United failed to do so on numerous occasions.

72.     The failure of United to properly reimburse Genesis constitutes a breach of the implied contract between United and Genesis.

73.     As a result of this breach, Genesis has been damaged.

74.     Additionally, through United's course of conduct, dealings, and the circumstances surrounding the relationship, United has shown to Genesis that it would pay for non-COVID testing services provided to United's members and beneficiaries.

75.     United previously paid for non-COVID testing services, which establishes an implied contract through United's course of conduct.  A reasonable person would know that Genesis performed non-COVID testing services expecting that United would pay for them appropriately.

76.     The failure of United to properly reimburse Genesis for the non-COVID testing services constitutes a breach of the implied contract between United and Genesis.  As a result of this brief, Genesis has been damaged.

77.     Based on the above, Genesis is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT III

## Breach of the Covenant of Good Faith & Fair Dealing

## (As to Non-ERISA Plan Claims)

78.     Genesis re-alleges each allegation contained above as if fully set forth at length herein.

79.     Genesis pleads this count only as to the claims related to plans not covered by ERISA.

80.     New Jersey law implies in every contractual relationship, including in the implied contract between Genesis and United, a covenant of good faith and fair dealing.

81.     United acted in bad faith with the purpose of depriving Genesis of the rights and benefits under the contract.  United lacked any reasonable basis for denying Genesis the rights and benefits under the implied contract.  United breached the covenant through acts of commissions and omission described herein that are wrongful and without justification, and which denied Genesis the "benefit of the bargain" intended by the parties' implied contract.

82.     As a result of this breach, Genesis has been damaged.

83.     United breached the implied covenant of good faith and fair dealing by failing to appropriately pay for both COVID testing and non-COVID testing and related services.

84.     Based on the above, Genesis is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT IV

## Unjust Enrichment & Quantum Meruit

## (As to Non-ERISA Plan Claims)

85.     Genesis re-alleges each allegation contained above as if fully set forth at length herein.

86.     Genesis pleads this count only as to the claims related to plans not covered by ERISA.

87.     Genesis provided valuable COVID-19 testing services as well as testing services unrelated to COVID-19 to United members and to United as the claims administrator and/or insurer.

88.     By providing medically necessary testing services to United members, Genesis conferred a benefit upon United because Genesis's provision of healthcare services facilitated United's obligations to arrange and pay for COVID-19 testing services and other testing services for its members.  In addition, United benefited from the insurance premiums from members and beneficiaries in exchange for out-of-network healthcare coverage.  To satisfy its legal obligations, United required the services of Genesis to render the testing services.  Genesis rendered testing services to United's members and beneficiaries.  Thus, Genesis conferred a benefit on United.

89.     United knew that Genesis provided the medically necessary testing services to members in satisfaction of United's obligations to its members.

Moreover, at all relevant times, United refused to pay Genesis for the COVID testing services Genesis provided to the patients at all, or to pay correctly, contrary to the CARES Act requirements.  As to the non-COVID testing services, United failed to pay the reasonable value of these services.

90.    United voluntarily accepted, retained, enjoyed, and continues to accept, retain, and enjoy the benefits conferred by Genesis, with the knowledge that United expects to and is entitled to payment for such services.

91.    Despite proper demand being made on United for payment for these services, United has failed to reimburse Genesis for the services provided.  United has received and retained a benefit and has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to Genesis.

92.    As a result of United's unjust enrichment, Genesis has suffered damages.  Based on the above, Genesis is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT V

### Promissory Estoppel

### (As to Non-ERISA Plan Claims)

93.     Genesis re-alleges each allegation contained above as if fully set forth at length herein.

94.     Genesis pleads this count only as to the claims related to plans not covered by ERISA.

95.     United undertook conduct that conveyed to Genesis that coverage for COVID testing would be afforded to patients, but then refused to issue proper payment when the bills were submitted by Genesis.

96.     United expected, or reasonably should have expected, that Genesis would rely on United's compliance with the CARES Act.

97.     United's pattern and practice of behavior in paying Genesis for testing services at the beginning of the pandemic (March, April, and May 2020) induced Genesis's reasonable reliance on the promise to pay.

98.     Genesis detrimentally relied on United's promises to pay by continuing to provide testing services to United members.  Genesis's reliance on the promises caused it to suffer a definite and substantial detriment and has caused it damage.

99.     Likewise, United undertook conduct that conveyed to Genesis that coverage for non-COVID testing would be afforded to patients by previously paying for non-COVID testing services at the appropriate rate.

100.    United expected, or reasonably should have expected, that Genesis would rely on the parties' prior course of dealing, and Genesis detrimentally relied

on United's promises to pay for non-COVID testing services by continuing to provide testing services to United members.  Genesis's reliance on the promises caused it damage.

101.  Based on the above, Genesis is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT VI

## Violations of New Jersey HINT & HCAPPA

## (As to Non-ERISA Plan and Fully Insured ERISA Plan Claims)

102.  Genesis re-alleges each allegation contained above as if fully set forth at length herein.

103.  Genesis pleads this count only as to the claims related to non-ERISA plans and to fully insured ERISA plans.

104.  Pursuant to the Healthcare Information Networks and Technologies Act ("HINT"), N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2, and 26:2J-8.1, and the corresponding regulations, N.J.A.C. 11:22-1.1 *et seq.*, United is required to remit payment to a healthcare provider for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by United, or forty (40) calendar days following non-electronic receipt of the claim by United.  In the alternative, United

29

is required to notify the provider within seven (7) calendar days if all or a portion of the claim cannot be adjudicated because the diagnosis coding, procedure coding, or any other data required to be submitted with the claim was missing, pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA").

105.    All overdue payments must bear simple interest at the rate of twelve (12) percent *per annum*, pursuant to HCAPPA.

106.    Despite its statutory duties, United as a matter of practice and/or policy delayed payment of properly submitted claims from Genesis and did not pay the claims correctly, and then did not pay interest on delayed payments.  By delaying payment of a claim, United earned and continues to earn profits from its use of the funds or profits that they would not have earned or continued to earn if payments were made in a timely manner.

107.    Genesis has submitted "clean" or "eligible" non-capitated claims for services rendered to the patients identified on a claims spreadsheet that Genesis will supply to United and file with the Court under terms compliant with the Health Insurance Portability and Accountability Act.  United failed to pay these claims within the prescribed statutory time period despite numerous attempts by Genesis to address and resolve these issues with United.  These practices by United are in violation of HINT and HCAPPA.

108.   As a result of United's violations of HINT and HCAPPA, Genesis has been damaged.

109.   Based on the above, Genesis is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT VII

## AWARD OF ATTORNEYS' FEES UNDER ERISA

### (As to ERISA Plan Claims)

110.   Genesis re-alleges each allegation contained above as if fully set forth at length herein.

111.   Pursuant to 29 U.S.C. § 1132(g)(1), Genesis requests that the Court "allow a reasonable attorney's fee and cost of action" to be paid by United for the violations discussed above.

112.   As a result of the actions and failings of United, including the failure to provide benefits as required under the ERISA plans and United's unreasonable records requests, Genesis has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Genesis anticipates incurring additional attorneys' fees and costs in a final amount that is currently unknown.  Genesis requests an award of reasonable attorneys' fees and costs.

**WHEREFORE**, Genesis prays that the Court grant the following relief:

(i)      Compensatory damages plus interest thereon, as allowed by law;

(ii)     All costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

(iii)     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Genesis demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Please take notice that the undersigned is designated as trial counsel in the above-captioned matter.

Respectfully submitted this 5th day of April 2023.

KING & SPALDING LLP

*/s/ Craig Carpenito*
Craig Carpenito (CC-1686)
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2142
ccarpenito@kslaw.com

James W. Boswell (*admitted pro hac vice*)
Georgia Bar No. 069838
Jennifer S. Lewin (*admitted pro hac vice*)
Georgia Bar No. 397958
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-3534
jboswell@kslaw.com
jlewin@kslaw.com

EDWARD A. CIENKI, ATTORNEY AT LAW
Edward A. Cienki (EC-2073)
5 Golf Drive
Hammonton, New Jersey 08037
Tel.:  (609) 567-0888

*Counsel for Genesis Laboratory Management LLC*

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2023, I caused to be filed the foregoing

AMENDED COMPLAINT with the Clerk of the Court using the CM/ECP system

and further caused the same to be served on all counsel of record via ECF.


Date:  April 5, 2023                                  By:  */s/ Craig Carpenito*
                                                            Craig Carpenito(CC1686)