<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENESIS LABORATORY MANAGEMENT LLC, | |
| Plaintiff, | No. 21cv12057 (EP) (JSA) |
| v. | **OPINION** |
| UNITED HEALTHCARE SERVICES, INC. and OXFORD HEALTH PLANS, INC., | |
| Defendants. | |

**PADIN, District Judge.**

Plaintiff Genesis Laboratory Management LLC ("Genesis" or "Plaintiff") alleges that Defendants United HealthCare Services, Inc. and Oxford Health Plans, Inc. (collectively "United" or "Defendants") failed to pay or underpaid Plaintiff for COVID-19 testing and other services provided to Defendants' insureds, plan members, and beneficiaries. D.E. 103 ("Second Amended Complaint" or "SAC"). Defendants move to dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.E 106 ("Motion" or "Mot."). Plaintiff opposes. D.E. 107 ("Opp'n"). Defendants reply. D.E. 109 ("Reply"). The Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the reasons below, the Court will **GRANT in part** and **DENY in part** Defendants' Motion.

## I.    BACKGROUND[1]

Genesis is a New-Jersey based molecular diagnostic and anatomic pathology laboratory offering a variety of testing services. SAC ¶ 14. United issues health insurance and administers

---

[1] The facts in this section derive from the Second Amended Complaint's well-pled factual allegations, which the Court presumes to be true for purposes of resolving this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

health plans that are funded by plan sponsors in New Jersey. *Id.* ¶¶ 2-4. As an out-of-network provider, Genesis submits reimbursement claims to United when it provides services to its members. *Id.* ¶ 17. Those reimbursements are funded by either United's own assets (for fully insured plans) or the assets of the relevant plan (for self-funded plans). *Id.* ¶ 16. Since the start of the pandemic, Genesis provided COVID-19-related testing services to patients who are members or beneficiaries of United's health plans, for which it submitted reimbursement claims to United. *Id.* ¶¶ 17, 19.

Between March and May 2020, United paid the majority of claims for COVID-19-related testing. *Id.* ¶ 36. In mid-April 2020, Genesis raised its COVID-19 diagnostic test price from $256.65 per test to $513 per test. *Id.* ¶ 29. Beginning in June 2020, United "systematically denied" payment of claims, and instead began requesting voluminous documentation, such as clinical records and other supporting documents, for services provided by Genesis. *Id.* ¶¶ 36-37. Genesis does not have access to many of the documents requested by United, nor does it have the ability to respond in the requisite 30-day window. *Id.* ¶ 39. United also denied claims based on its "erroneous determination" that a place of service ("POS") code on the claim is incorrect. *Id.* ¶ 42.

Some patients tested by Genesis were enrolled in United health benefit plans governed by the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶ 47. The other plans, which are not subject to ERISA, are governed by state law. *Id.* ¶ 4. Genesis avers that ERISA plans "incorporate the obligations that Congress created under the FFCRA[2] and the CARES Act[3] to reimburse out-of-network laboratories" like Genesis. *Id.* ¶ 50. Genesis also alleges that patients who obtained its services "normally executed assignment of benefit forms in connection with their

---

[2] The Families First Coronavirus Response Act, Pub. L. No. 116-127, § 6001, 134 Stat. 178 (2020).
[3] The Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 3202, 134 Stat. 281 (2020).

requests to receive testing services." *Id.* ¶ 56. The assignments authorize Genesis to act as a patient's agent for purposes of obtaining payment. *Id.* Genesis now seeks to recover benefits under Section 502 of ERISA and brings numerous other state law claims.

## II.    PROCEDURAL HISTORY

Genesis's initial Complaint alleged (1) violations of the FFCRA and the CARES Act, (2) breach of implied contract, (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment and quantum meruit; (5) promissory estoppel; and (6) violations of New Jersey's Healthcare Information Networks and Technologies ("HINT") Act and the Health Claims Authorization, Processing and Payment Act ("HCAPPA"). D.E. 43 at 2-3 (citing D.E. 1) ("Initial Opinion"). This Court previously dismissed *with prejudice* the FFCRA and CARES Act claim, *id.* at 7, and dismissed *without prejudice* the remaining state law claims, noting that "to the extent [the state law] claims relate to ERISA plans, they are preempted by ERISA." *Id.* at 10. Genesis filed a First Amended Complaint, D.E. 46 ("Amended Complaint"), which pleaded Count I as an ERISA claim and re-pleaded Counts II through V as to non-ERISA plan claims and Count VI as to non-ERISA and fully insured ERISA plan claims. *Id.* ¶¶ 54-109. While United's previous motion to dismiss was pending, D.E. 77, Genesis moved for leave to further amend the Amended Complaint. D.E. 90. The Court granted Genesis's motion. D.E. 101. Genesis's Second Amended Complaint followed, which pleads the same claims as in the Amended Complaint. SAC.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Finally, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## IV.    ANALYSIS

As to Count I, the ERISA claim, United argues that (1) Genesis lacks standing to seek benefits under ERISA; (2) Genesis fails to plead facts establishing exhaustion of administrative remedies; and (3) Genesis fails to allege sufficient facts. Mot. at 7-15. United also argues that Genesis's state law claims are insufficiently alleged. *Id.* at 16-25.

### A.    Genesis States an ERISA Claim

*1.    Genesis adequately pleads derivative standing under ERISA*

ERISA "provides employees covered by [health insurance] plans with the right to sue to 'recover benefits due . . . under the terms of the [the] plan[.]'" *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (quoting 29 U.S.C. §

1132(a)(1)(B)). That right is limited to participants or beneficiaries under the plan. *Id.* Healthcare providers "do[] not fall into either category." *Id.* at 450. "Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).

United argues that Genesis fails to allege a valid assignment of benefits ("AOBs"), as it only provides two examples of AOBs, one of which is retroactive, which allegedly apply to 13,000 United members, a "tiny fraction" of those who allegedly received services in this case. Mot. at 10-11. Genesis responds that to survive a motion to dismiss, it is sufficient to provide example language from an AOB and allege that each member signed such a form. Opp'n at 15-16. The Court mostly agrees with Genesis.[4]

It is true that "[t]he Third Circuit has not dictated how specifically a plaintiff must allege the existence and contents of the assignments on which its standing rests"; rather, the "general standard for pleading derivative ERISA standing" is whether the "Complaint contains specific factual allegations to render plausible their claim that the Assignments they received from the Plan Participants conferred them with the right to receive the full benefits of that Plan." *NJSR Surgical Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 523-24 (D.N.J. 2013) (cleaned up).

---

[4] In the alternative, Genesis alleges that the FFCRA and the CARES Act "obviate[] the need for providers to obtain a specific assignment of ERISA benefits from patients to be entitled to seek reimbursement from the plan or to be entitled to bring an action under ERISA." SAC ¶ 59. United cites district court cases rejecting that proposition. Mot. at 8-9; *see, e.g., Saloojas, Inc. v. United Healthcare Ins. Co.,* No. 22-3536, 2023 WL 7393016, at *3 (N.D. Cal. Nov. 8, 2023) ("[N]either the CARES Act nor FFCRA obviate the need for a provider to obtain such an assignment."). In opposition, Genesis cites no authority at all, and merely decries those cases as improperly decided. Opp'n at 16-17. In the absence of Third Circuit precedent, or any contrary authority, the Court will not unilaterally determine this question.

Even so, no case addressing this specific issue provides a bright-line test as to the adequacy of pleadings. In *NJSR*, the complaint's conclusory allegation that "the Patients provided assignments of benefits to the Plaintiffs" fell short. *Id.* at 523 (internal marks omitted). In *Demaria v. Horizon Healthcare Servs., Inc.*, plaintiffs asserted "that 'as a matter of course,' they would obtain written assignments . . . which entitled Plaintiffs to any claims for reimbursement which would otherwise be payable to the Plan Participants." No. 11-7298, 2012 WL 5472116, at *1 (D.N.J. Nov. 9, 2012). The court found that the "vague references to a common practice and purported assignment" were insufficient. *Id.* at *4. Conversely, plaintiffs' quotation of the allegedly obtained assignments in *Premier Health Ctr., P.C. v. UnitedHealth Grp.* was sufficient to establish derivative standing. No. 11-425, 2012 WL 1135608, at *6-7 (D.N.J. Apr. 4, 2012).

Genesis meets the pleading standard here. Its allegation that patients "normally executed" AOBs in connection with requests to receive testing services, standing alone, would not suffice. SAC ¶ 56. However, Genesis also provides sample language from AOBs. *Id.* ¶¶ 57-58. Consistent with the analysis in *Premier Health*, although Genesis does "not indicate from which assignment form this language was taken, or which of their patients actually signed the form, providing that level of specificity is unnecessary[.]" 2012 WL 1135608, at *7 (citing *Phillips*, 515 F.3d at 234; *Sportscare of America, P.C. v. Multiplan, Inc.*, No. 10-4414, 2011 WL 223724, at *4 (D.N.J. Jan. 24, 2011)). Therefore, Genesis adequately pleads derivative standing under ERISA.

However, the Court agrees with United that to the extent certain AOBs are retroactive, they cannot confer standing after litigation commenced. *See Reisinger v. Seneca Specialty Ins. Co.*, No. 07-1221, 2011 WL 2433681, at *5 (M.D. Pa. June 14, 2011) ("Post-filing events that supply standing that did not exist on filing may be disregarded[.]") (cleaned up). Thus, the Court will

partially **DISMISS** the ERISA claim for lack of standing as to the plans from United members whose AOBs are retroactive.

> 2.    *Genesis adequately pleads exhaustion of administrative remedies*

The parties do not dispute that ERISA plan participants must "exhaust their administrative remedies before seeking judicial relief," *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990), or that plaintiffs need not exhaust administrative remedies "if it would be futile to do so." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). United argues that even if Genesis had derivative standing under ERISA, its allegations are too conclusory to establish administrative exhaustion or that exhaustion would have been futile. Mot. at 12. The Court disagrees.

Genesis alleges that it "regularly appeals denials and underpayments to United" and was instructed by United to "stop any further submissions of COVID-19 testing claims through United's appeals process." SAC ¶¶ 17, 65. United contends that Genesis should have identified what it specifically did to exhaust the "unique administrative remedies under each plan." Mot. at 13. The Court notes that "[t]he requirement that a plaintiff ha[s] exhausted administrative remedies does not seem to embody any particular standard of pleading." *NJSR*, 979 F. Supp. 2d at 524. Whether and to what extent exhaustion must be pled is a "vexed question" that "may depend on the particular qualities of the claim." *Ciotti v. Meadowlands Hosp. Med. Ctr.*, No. 13-2055, 2015 WL 127720, at *4 (D.N.J. Jan. 7, 2015). Although Genesis's pleadings are sparse, the Court finds them sufficient for purposes of surviving a motion to dismiss and notes that the question is best suited for a motion for summary judgment. *NJSR*, 979 F. Supp. 2d at 524 (collecting cases). The

Court sees no reason to disperse of an entire case on this basis, particularly in light of Genesis's allegations that it utilized United's appeals process.

### 3.     The ERISA claim is sufficiently pled

United lastly argues that the absence of allegations regarding specific ERISA plan terms is fatal. Mot. at 14. A civil action may be brought under Section 502(a)(1)(B) to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "To assert a claim under this provision, a plan participant must demonstrate that 'he or she . . . ha[s] a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobile Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

Courts in this district vary in their pleading requirements for Section 502(a)(1)(B) claims. Some require citations to specific ERISA plan provisions and more details on which terms were violated. *See, e.g.*, *Advanced Orthopedics & Sports Med. Inst. Ex rel. MS v. Anthem Blue Cross Life & Health Ins. Co.*, No. 20-13243, 2021 WL 12320348, at *8 (D.N.J. Oct. 18, 2021) (finding allegations conclusory where plan provision was pleaded without more); *Emami v. Cmty. Ins. Co.*, No. 19-21061, 2021 WL 4150254, at *5 (D.N.J. Sept. 13, 2021) (finding allegation, without citation to plan provision, that "[d]efendants improperly denied benefits due to [patient] under the terms of the Plan" insufficient); *LeMoine v. Empire Blue Cross Blue Shield*, No. 16-6786, 2018 WL 1773498, at *6 (D.N.J. Apr. 12, 2018) (finding pleadings insufficient when plaintiff failed to specify which plan entitled her to services). Others do not. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 16-8876, 2018 WL 1440325, at *5 (D.N.J. Mar. 22, 2018) (finding allegations, among others, that plan required defendants to pay for out-of-

network services based on "usual, customary and reasonable rates" satisfactory); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-0462, 2007 WL 4570323, at *4 (D.N.J. Dec. 26, 2007) (finding allegations that certain plans required defendant to reimburse insureds "for a portion of the cost of services" provided by out-of-network providers sufficient).

The Second Amended Complaint does not fit neatly into either category. Genesis states it is "not privy to the information that would allow it to determine whether the claims at issue relate to ERISA plans or to plans not governed by ERISA." SAC ¶ 53. Naturally, therefore, it cannot plead specific plan provisions or even under the latter group of cases' requirements, generally aver that the plans require reimbursement for the relevant services. At most, it alleges that United's denials and/or underpayments for testing services "violate provisions of these ERISA plans[.]" *Id.* ¶ 55. This barebone pleading generally does not suffice. Typically, there must, at minimum, be some contention that the plan requires payment for the services rendered.

However, the gravamen of Genesis's allegations is that ERISA plans incorporate the obligations created under the FFCRA and the Cares Act to reimburse it for COVID-19 testing. *Id.* ¶ 50. Therefore, because United is solely "in possession of the information necessary to determine which claims at issue" relate to ERISA-governed plans, *id.* ¶ 48, this "unique legal circumstance" obviates any requirement to plead specific plan provisions. Opp'n at 24. Genesis rests solely on the back of Judge McNulty's well-reasoned opinion addressing this theory as a matter of first impression in this district. *See Open MRI and Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*, No. 20-10345, 2022 WL 1567797 (D.N.J. May 18, 2022).

As previously summarized in this Court's Initial Opinion, Judge McNulty "reasoned that because 'who' is responsible for providing coverage for COVID-19 testing under Sections 6001(a) and (d) of the FFCRA, is defined via cross-reference to ERISA, then 'at the very least, [the

FFCRA's] requirement of COVID-19 testing coverage is intended to interlock with ERISA.'" Initial Opinion at *4 (quoting *Open MRI*, 2022 WL 1567797, at *8). Judge McNulty inferred Congress's intent that the COVID-19 testing requirement be treated as an ERISA requirement because "Section 6001(b) of the FFCRA, which provides that enforcement of Section 6001(a)'s COVID-19 testing coverage requirement applies to 'group health plans and health insurance issuers offering group or individual health insurance coverage as if included in [ ] part 7 of [ERISA].'" *Id.* at *5 (quoting *Open MRI*, 2022 WL 1567797, at *10). Therefore, this Court found that "Section 6001 of the FFCRA and Section 3202 of the CARES Act must be considered together with ERISA because they impose legal requirements on ERISA plans." *Id.* at *5. Accordingly, as Genesis has established derivative standing under ERISA, under Judge McNulty's holding in *Open MRI*, which this Court adopts, Genesis states a claim under Section 502(a)(1)(B).[5] As noted above, the Section 502(a)(1)(B) claim may only proceed as to plans from United members whose AOBs were effective prior to commencement of this lawsuit.

**B.    Genesis Fails to State Any State Law Claim**

Counts II-V of the Second Amended Complaint allege state law violations as to non-ERISA plans and Count VI alleges violations as to non-ERISA and fully insured ERISA plan claims. The Court will address their deficiencies in turn.

*1.    Breach of implied contract and covenant of good faith and fair dealing*

Genesis first fails to state a breach of implied contract claim. An implied-in-fact contract is one "inferred from the conduct of the parties" in which "the agreement and promise have not been verbally expressed." *In re Penn. Cent. Transp. Co.*, 831 F.2d 1221, 1128 (3d Cir. 1987). The

---

[5] Genesis's claim for attorneys' fees may proceed, for now, but a determination is obviously premature.

elements are identical to those required for an express agreement, *id.*, which are: "(1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result." *Days Inn Worldwide, Inc. v. Shara & Sons, Inc.*, No. 13-1049, 2013 WL 5535959, at *3 (D.N.J. Oct. 7, 2013) (quoting *Murphy v. Implicito,* 392 N.J. Super. 245, 265 (App. Div. 2007)). Parties create enforceable contracts "when they agree on its essential terms," which include price and duration. *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004).

United argues that Genesis fails to allege any details regarding what United agreed to pay it or for how long, and merely points to a three-month period of payment as a "course of conduct." Mot. at 17; SAC ¶¶ 72-74. Genesis responds that the price was set by the CARES Act and that the parties' implied agreement mandated that United would continue to pay for services "within the time frame provided by federal law in a public health emergency." Opp'n at 26-27 (citing SAC ¶¶ 26, 74). The Court agrees with United.

Genesis's allegations that United reimbursed it for claims from March-May 2020 are insufficient to constitute a course of conduct such that the Court can discern the parties agreed on essential terms. SAC ¶ 74. Genesis acknowledges that it increased its testing prices from $256.65 to $513 per test. *Id.* ¶ 29. The Court cannot harmonize these allegations to find that Genesis alleges the existence of an implied contract of seeming indefinite duration. *See Abira Med. Labs., LLC v. Zurich Am. Ins. Co.*, No. 23-3891, 2024 WL 2746102, at *4 (D.N.J. May 29, 2024) ("Without preauthorization, Plaintiff's generalized allegation that Defendant paid some claims at some point does not create a plausible basis for the Court to presume that the parties' 'course of dealing' satisfies the elements for a contract-based claim."). Nor is the Court persuaded by

Genesis's argument that Section 3202 of the CARES Act countenances the creation of a contract with unilaterally set prices absent any negotiation.  Opp'n at 26.

As Genesis fails to adequately allege the existence of an implied contract, it "cannot allege that [United] breached the covenant of good faith and fair dealing."  *Hall v. Revolt Media & TV, LLC*, No. 17-2217, 2018 WL 3201795, at *3 (D.N.J. June 29, 2018).  The Court will accordingly **DISMISS** Counts II and III ***with prejudice***.  The Court finds that amendment would be futile and unduly delay this case, as this lawsuit was initiated in June 2021 and Genesis has been afforded numerous opportunities to amend.  *See In Re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

### 2.    *Unjust enrichment and quantum meruit*

To establish a claim of unjust enrichment under New Jersey law, Genesis must establish that United "'received a benefit and that retention of that benefit without payment would be unjust.'"  *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 240 (3d Cir. 2020) (quoting *Thieme v. Aucoin-Thieme*, 227 N.J. 269 (2016)).  "Quantum meruit similarly requires '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'"  *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D.N.J. May 17, 2021) (quoting *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 172 N.J. 60 (2002)).  Recovery under both doctrines "'requires a determination that defendant has benefitted from plaintiff's performance.'"  *Id.* (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 450 N.J. Super. 210 (2017)).

United argues that Genesis conferred no benefit on United, and only the members and beneficiaries did.  Mot. at 22.  Genesis disagrees, rebutting that "[b]y rendering care to United members, Genesis has provided valuable services directly to United because the provision of such

services satisfies United's obligation to arrange and pay for healthcare services for its members." Opp'n at 34.

Genesis principally relies on *Plastic Surgery Center* for its position. The Third Circuit held, in the context of an ERISA action, that "the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Plastic Surgery Ctr.*, 967 F.3d at 240. United dismisses this precedent in Reply, arguing that the Third Circuit did not render a binding holding on the merits of the claim, instead only addressing preemption. Reply at 10 n.4. Instead, it invokes district court decisions dismissing unjust enrichment claims because those courts held that the requisite benefit was derived only by the insured party. *Id.* at 9-10 (collecting cases). The Third Circuit acknowledged that "district judges in New Jersey have disagreed over whether a healthcare provider's provision of services to an insured may ever constitute a 'benefit' to an insurer for purposes of an unjust enrichment claim." *Plastic Surgery Ctr.*, 967 F.3d at 240 n.26. However, that disagreement is no longer relevant, as "the Third Circuit now sees it differently" and recognizes that unjust enrichment claims may be brought against insurers. *MHA*, 539 F. Supp. 3d at 361.

Nevertheless, even acknowledging that an unjust enrichment claim could be maintained against an insurer, Genesis's pleadings are still insufficient as it does not "plausibly establish that a plan exists under which [United] 'received a benefit.'" *Abira*, 2024 WL 2746102, at *5. The Court above adopted Judge McNulty's reasoning in *Open MRI* and found that COVID-19 testing is treated as an ERISA requirement, obviating the need for Genesis to plead specific plan provisions. *See supra*, A.3. But that finding was limited to ERISA plans. Genesis alleges an unjust enrichment and quantum meruit claim as to *non-ERISA* plan claims. Without any reference to duties owed to the insureds under these non-ERISA plans, Genesis "does not plead allegations

that allow this Court to infer that [United] unjustly retained a benefit under any plan without payment." *Abira*, 2024 WL 2746102, at \*5.  It therefore fails to state a claim for quantum meruit. Accordingly, the Court will **DISMISS *with prejudice*** the unjust enrichment and quantum meruit claim.  *See U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (upholding district court's dismissal with prejudice due to amendment futility).

3.    *Promissory estoppel*

To sustain a promissory estoppel claim under New Jersey law, Genesis must establish the following elements: "(1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that it will induce reliance by the promisee; (3) the promisee must reasonably rely upon the promise; and (4) the promisee must experience detriment of a definite and substantial nature by relying on the promise." *Pitak v. Bell Atl. Network Servs., Inc.*, 928 F. Supp. 1354, 1367 (D.N.J. 1996).  Genesis argues that it sufficiently alleges such a promise based on "United's prior payment practices[.]" Opp'n at 36.

For the same reason Genesis fails to state a breach of implied contract claim, it fails to state a claim for promissory estoppel.  Its only allegations regarding a promise are premised on either United's purported course of conduct in having paid for certain claims in a three-month period or the CARES Act's obligation that United pay for services.  SAC ¶¶ 26, 72-74.  These are insufficient to establish that United agreed to cover services for the prices set by Genesis.  *See Premier Orthopaedic Assocs. of Southern NJ, LLC v. Aetna, Inc.*, No. 20-11641, 2021 WL

2651253, at *4 (D.N.J June 28, 2021).  The Court will accordingly **DISMISS *with prejudice*** the promissory estoppel claim.  *See Schumann*, 769 F.3d at 849.

        4.     *HINT Act and HCAPPA*

Genesis lastly brings a claim for violations of the HINT Act and HCAPPA.  United seeks to dismiss this count on the ground that neither statute creates a private right of action.  Mot. at 24 (citing *MHA*, 539 F. Supp. 3d at 356).  Genesis argues the opposite, relying on earlier state court cases that either found a private remedy exists for providers, Opp'n at 37 (citing *Sutter v. Horizon BlueCross/Blue Shield of N.J.*, No. L-3685-02, 2003 WL 27381731, at *5 (N.J. Super. Feb. 13, 2003)), or noted the possibility of such in *dicta*, *id.* at 38 (citing *Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*, 376 N.J. Super 48, 58 (App. Div. 2005)).  United points out that Judge McNulty's decision in *MHA* was informed in part by the "Legislature's creation of a detailed and specific arbitration mechanism" through HCAPPA, which "renders much of *Sutter's* and *Medical Society's* reasoning moot." 539 F. Supp. 3d at 358.  The Court agrees and again adopts Judge McNulty's reasoning.  It is resultingly "reluctant to expand the scope of New Jersey law" and find a private cause of action under either statute.  *BrainBuilders, LLC v. Aetna Life Ins. Co.*, No. 17-3626, 2024 WL 358152, at *13 (D.N.J. Jan. 31, 2024).  Therefore, the Court will **DISMISS *with prejudice*** the HINT Act and HCAPPA claim.

## V.    CONCLUSION

For the reasons above, the Court will **GRANT in part** and **DENY in part** United's Motion. The Court will **partially DISMISS** Count I, the ERISA claim, as to plans from United members whose AOBs are retroactive.  Count I may **PROCEED** as to plans from United members whose AOBs were effective at the time this lawsuit commenced.  The Court will **GRANT** the Motion as

to all state law claims (Counts II-VI) and **DISMISS** them ***with prejudice***.  An appropriate Order accompanies this Opinion.

Dated: **January 29, 2025**

Evelyn Padin, U.S.D.J.