NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GENESIS LABORATORY MANAGEMENT LLC, | |
| Plaintiff, | No. 21cv12057 (EP) (JSA) |
| v. | **OPINION** |
| UNITED HEALTHCARE SERVICES, INC. and OXFORD HEALTH PLANS, INC., | |
| Defendants. | |

**PADIN, District Judge.**

Defendants/Counterclaimants United HealthCare Services, Inc. ("United") and Oxford Health Insurance, Inc. ("Oxford") bring various federal, state, and common law claims against Plaintiff/Counterclaim Defendant Genesis Laboratory Management LLC ("Genesis") and Third Party Counterclaim Defendants Metropolitan Healthcare Billing, LLC ("Metropolitan") and unnamed John Does (collectively, "Counterclaim Defendants") for submitting allegedly fraudulent bills for reimbursement under various health plans. D.E. 133 at 19–45[1] ("Counterclaims"). Counterclaim Defendants move to dismiss all Counterclaims. D.E. 151-1[2] ("Motion" or "Mot."). Counterclaimants oppose. D.E. 155 ("Opp'n"). Counterclaim Defendants reply. D.E. 157 ("Reply").

---

[1] Pages 19–45 of D.E. 133 disclose Counterclaimants' counterclaims. The rest of D.E. 133 discloses Defendants' Answer to Plaintiff's Second Amended Complaint at D.E. 103. For purposes of this Opinion—where only the counterclaims are at issue—the Court will refer to the numbered paragraphs spanning pages 19–45. The Court will refer to the numbered paragraphs spanning pages 1–19 of D.E. 133 as Counterclaimants' "Answer."

[2] Counterclaim Defendants filed their notice of motion at D.E. 151. For ease of reference, the Court refers to D.E. 151-1 as Counterclaim Defendants' Motion.

The Court decides the Motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, the Court will **GRANT in part** and **DENY in part** the Counterclaim Defendants' Motion.

## I.    BACKGROUND

### A.    Factual Background[3]

#### 1.    *The parties*

Genesis is a molecular diagnostic and anatomic pathology laboratory in New Jersey that offered testing services during the COVID-19 pandemic, such as COVID-19 diagnostic testing and antibody testing.  Counterclaims ¶ 17.  Metropolitan is a revenue cycle management company "that offers personalized billing services to healthcare professionals nationwide."  *Id.* ¶ 18. Metropolitan provides billing services for Genesis.  *Id.*  Both Genesis and Metropolitan are owned by Rajiv Uppal, M.D.  *Id.* ¶ 19.

United and Oxford issue health insurance plans and administer them in New Jersey.  *See* Answer ¶¶ 2–4.  As an out-of-network provider, Genesis submits claims for reimbursement to Counterclaimants for services provided to Counterclaimants' members.  *Id.* ¶¶ 16–17.  Some of Counterclaimants' members were participants of health insurance plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–461 ("ERISA").  *Id.* ¶ 4.  Some of Counterclaimants' members were participants of non-ERISA plans, which are governed by state law.  *Id.*

---

[3] For the purpose of the Motion, the Court accepts the factual allegations of the Counterclaims as true and draws all inferences in the light most favorable to the Counterclaimants.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  The Court also draws additional context from Counterclaimants' admissions provided in their Answer.

### 2.    *Counterclaimants' allegations*

During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat. 281 (2020) (the "CARES Act"). Counterclaims ¶ 22. To ensure pricing transparency for COVID-19 tests, the CARES Act required testing facilities, like Genesis, to publicly post their cash price. *Id.* ¶ 22. The CARES Act further required insurers, like Counterclaimants, to reimburse those facilities for self-paid COVID-19 tests at the facility's publicly posted rate. *Id.* ¶ 22. Counterclaimants allege that Genesis charged self-paying members a rate of $100 for COVID-19 tests but publicly posted and charged Counterclaimants a rate of $513. *Id.* ¶ 23.

Counterclaimants also allege that Genesis improperly billed for duplicative COVID-19 tests that were submitted for the same patient and had the same date of service as bills submitted by other facilities. *Id.* ¶¶ 24, 43–48. Counterclaimants finally allege that Genesis billed Counterclaimants for needless expensive tests, many of which conferred no medical benefit on patients. *Id.* ¶ 25.

### B.    **Procedural History**

Genesis initially brought this action against Counterclaimants in June 2021, alleging (1) violations of the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020) ("FFCRA"), and the CARES Act; (2) breach of implied contract; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment and quantum meruit; (5) promissory estoppel; and (6) violations of New Jersey's Healthcare Information Networks and Technologies Act and the Health Claims Authorization, Processing, and Payment Act. *See* D.E. 1. Counterclaimants moved to dismiss the complaint on July 12, 2021. D.E. 21. On February 15, 2023, this action was transferred to the Hon. Evelyn Padin, U.S.D.J., D.E. 41, who then granted in part and denied in part Counterclaimants' motion on March 6, 2023, D.E. 43. This Court (1) dismissed the FFCRA

3

and CARES Act claims *with prejudice* and (2) dismissed the remaining state law claims *without prejudice* but noted that to the extent the claims were related to ERISA plans, they were preempted by ERISA.  D.E. 43 at 7–10.

Genesis then filed a first amended complaint on April 5, 2023, bringing claims for violations of ERISA and state law.  D.E. 46.  After the parties unsuccessfully engaged in settlement discussions, Counterclaimants moved to dismiss Genesis's first amended complaint.  *See* D.E. 77. While Counterclaimants' second motion to dismiss was pending, Genesis sought and obtained leave to file a second amended complaint again bringing claims for violations of ERISA and state law.  D.Es. 90, 102, 103, 104.  Counterclaimants then moved to dismiss Genesis's second amended complaint.  D.E. 106.  This Court partially dismissed Genesis's ERISA claim *without prejudice* and dismissed Genesis's state law claims *with prejudice*.  D.E. 120 ("January 29, 2025 Opinion") at 3.

Following this Court's January 29, 2025 Opinion, Counterclaimants filed an answer and counterclaims against Genesis and Third-Party Counterclaim Defendant Metropolitan.  *See* Answer & Counterclaims.  Counterclaimants bring ten counterclaims against Counterclaim Defendants:

- Count One: recoupment of overpayments under ERISA § 1132(a)(3);

- Count Two: recoupment of overpayments under the terms of non-ERISA plans;

- Count Three: violation of the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33A-1;

- Count Four: common law fraud;

- Count Five: common law fraudulent misrepresentation;

- Count Six: common law fraudulent concealment;

4

- Count Seven: common law negligent misrepresentation;

- Count Eight: common law unjust enrichment;

- Count Nine: civil conspiracy; and

- Count Ten: declaratory judgment.

Counterclaims ¶¶ 61–128.  Counterclaim Defendants' Motion followed.  Mot.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Cnty. of Allegheny*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Although there is no "'probability requirement,'" plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The allegations must amount to "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

5

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

**B.      Federal Rule of Civil Procedure 9(b)**

In addition to satisfying Rule 12(b)(6), claims that sound in fraud must also satisfy Federal Rule of Civil Procedure 9(b). Rule 9(b) requires stating "with particularity the circumstances constituting fraud." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019); *Iqbal*, 556 U.S. at 686. That particularity requirement includes pleading "the who, what, when, where, and how of the events at issue." *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). Furthermore, allegations that "could plausibly have either a legal or illegal explanation fall short of Rule 9(b)'s burden because the possibility of a legitimate explanation undermines" any inference of fraud. *United States v. Bracco USA, Inc.*, No. 20-8719, 2024 WL 1161384, at *3 (D.N.J. Mar. 14, 2024) (quoting *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018)), *aff'd*, No. 24-1668, 2025 WL 1261779, at *2 (3d Cir. May 1, 2025). "A mere plausible inference of illegality is not enough." *Bookwalter*, 946 F.3d at 176.

**III.      ANALYSIS**

Counterclaimants seek recoupment of overpayments based upon three sets of allegations, all of which appear to underlie each counterclaim.[4] Counterclaimants first allege that Genesis,

---

[4] Counterclaimants include other allegations in their Counterclaims but do not explain what cause(s) of action they intend to bring based upon those other allegations. For example, Counterclaimants allege that Genesis's prices were higher than those charged by other laboratories

6

with assistance from Metropolitan, misrepresented the self-pay price Genesis charged for COVID-19 tests and used that misrepresented price to collect larger reimbursements from Counterclaimants than it was entitled to. Counterclaims ¶¶ 22–23, 36–39 ("Cash Price Allegations"). Counterclaimants next allege that they paid twice for various COVID-19 tests because Genesis, with Metropolitan's help, and other third-party facilities submitted duplicative bills for COVID-19 tests. *Id.* ¶¶ 24, 43–48 ("Duplicative Billing Allegations"). Finally, Counterclaimants allege that Genesis, with Metropolitan's help, improperly billed for expensive and unnecessary tests. *Id.* ¶¶ 25, 49–54 ("Ancillary Testing Allegations").

For the reasons detailed below, Counterclaimants do not state any claim against Metropolitan, nor do they state any state law or common law claim  The Court will therefore **GRANT** the Motion **in part** and will **DISMISS** Counts Two, Three, Four, Five, Six, Seven, Eight, and Nine. Counterclaimants do, however, state an ERISA claim and a claim for declaratory judgment based upon the Cash Price Allegations as those allegations relate to ERISA plans. The Court will therefore **DENY** the Motion **in part** and permit Counts One and Ten to proceed.

### A.    Cash Price Allegations

Counterclaimants allege Genesis committed fraud by publicly posting one cash price while actually charging patients another. Cash Price Allegations. Counterclaimants bring an ERISA claim, state law claims, common law claims, and claims for declaratory relief based upon this purportedly fraudulent scheme. Counterclaims ¶¶ 61–128. Counterclaim Defendants challenge the sufficiency of these Counterclaims by arguing that (1) the state law claims are preempted by

---

like Quest Diagnostics. *See* Counterclaims ¶ 31. Counterclaimants also complain that they reimbursed Genesis at higher rates than Medicare had to. *See id.* Counterclaimants do not explain what is actionable about these allegations. Nor do they argue in support of any claims premised upon these other allegations. The Court therefore does not consider them.

ERISA; (2) the ERISA claim is inadequately pled under Rule 12(b)(6); (3) the state law and common law claims are inadequately pled under Rules 9; and (4) the claims for declaratory judgment and civil conspiracy must fail because they are derivative of improperly brought claims.

Counterclaim Defendants are correct in part. The state law and common law claims are preempted by ERISA, but the ERISA claim (and therefore, the derivative declaratory judgment claim) is adequately pled. The Court explains what survives Counterclaim Defendants' Motion in further detail below.

> 1.    *ERISA preempts state law and common law claims based on the Cash Price Allegations*

>> i.    <u>Express preemption standard</u>

To provide a "uniform enforcement mechanism" for enforcing ERISA's rules and requirements, Congress enacted (1) a cause of action under 29 U.S.C. § 1132(a)(1)(B); and (2) "a broad express preemption provision, which 'supersedes any and all State laws insofar as they may now hereafter relate to any employee benefit plan,'" under 29 U.S.C. § 1144(a). *Plastic Surgery Ctr. P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990)).

ERISA's preemption clause is particularly far-reaching. *Ingersoll-Rand*, 498 U.S. at 138 (characterizing 29 U.S.C. § 1144(a) as "deliberately expansive" (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987))). 29 U.S.C. § 1144(a) states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now hereafter related to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

8

Congress's intent to confer ERISA with "extraordinary pre-emptive power" to preclude causes of action arising under State law is therefore clear.[5]  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987); *Ingersoll-Rand*, 498 U.S. at 138.  All that is therefore required to invoke ERISA's express preemption clause is that the cause of action "relate to an employee benefit plan."  *Ingersoll-Rand*, 498 U.S. at 138.

Notwithstanding Congress's intent for § 1144(a) to have extensive reach, ERISA's express preemption clause is not limitless.  § 1144(a) does not apply if the State law claim "has only a tenuous, remote, or peripheral connection with covered plans," as often occurs with "laws of general applicability."  *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.1 (1992).  Instead, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).  A law has a "connection with" a plan if it "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'"  *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)).  Laws also have a "connection with" a plan if they exhibit "acute, albeit indirect, economic effects [that] force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers."  *Id.*

"Put differently, if 'the court must find . . . that an ERISA plan exists,' to establish [a cause of action], such that 'there simply is *no* cause of action if there is no plan,' then 'the court's inquiry

---

[5] ERISA defines "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law."  *Ingersoll-Rand*, 498 U.S. at 138–39 (quoting 29 U.S.C. § 1144(c)(1)).  "This includes not only state statutes, but also common law causes of action."  *Plastic Surgery*, 967 F.3d at 226 (citing *Menkes*, 762 F.3d at 294).  The Court therefore collectively refers to both Counterclaimants' state law claims and common law claims as Counterclaimants' "State law claims" for the remainder of this Opinion.

must be directed to the plan,'" and the cause of action necessarily "relates to" an ERISA plan. *Plastic Surgery*, 967 F.3d at 240 (quoting *Ingersoll-Rand*, 498 U.S. at 140).  Therefore, if a plaintiff can bring his claim under ERISA, and "there is no other independent legal duty that is implicated by a defendant's actions," then the plaintiff's cause of action is preempted under § 1144(a).  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004); *see Plastic Surgery*, 867 F.3d at 237 (finding claims that are premised upon plan obligations preempted by § 1144(a)).

Therefore, the question here is whether the source of Counterclaim Defendants' obligation to charge self-paying patients its publicly posted cash price arises from the terms of an ERISA plan or whether Counterclaimants' State law claims would require construing the terms of ERISA plans.

> ii.       *ERISA preempts State law claims based on Cash Price Allegations*

Counterclaimants' State law claims based on Genesis's posted cash price for COVID-19 testing are preempted by § 1144(a).   Under § 3202 of the CARES Act, insurers (like Counterclaimants) must reimburse providers (like Genesis) for COVID-19 testing at a rate equal to the provider's publicly posted cash price for COVID-19 testing.  *See* CARES Act § 3202(a). Insurers and patients were supposed to be charged the same cash price.  *See id.* § 3202(a)–(b).

In its January 29, 2025 Opinion, this Court adopted the reasoning of Judge McNulty's opinion in *Open MRI and Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health and Life Insurance Co.*, No. 20-10345, 2022 WL 1567797 (D.N.J. May 18, 2022).  January 29, 2025 Opinion at 10.  The Court accordingly held that the CARES Act's COVID-19 testing coverage requirement imposed a legal obligation on ERISA plans and thereby modified the terms of those plans.  *Id.* (citing *Open MRI*, 2022 WL 1567797, at *5–10); *see* D.E. 43 at 10 ("[§] 3202 of the Cares Act must be considered together with ERISA because [it] imposes legal requirements on ERISA plans."); *Murphy Med. Assocs., LLC v. Cigna Health*, No. 20-1675, 2022 WL 10560321,

at *2–3 (D. Conn. Oct. 18, 2022).  In the absence of the CARES Act's modification of ERISA plans, therefore, Counterclaimants would have no cause of action based on any discrepancy between (1) the publicly posted cash price of COVID-19 testing and rate for which they sought reimbursement from Counterclaimants pursuant to any ERISA plan and (2) the cash price actually charged to patients.  As a result, Counterclaimants' State law claims are preempted by § 1144(a) as they relate to ERISA plans.  *See* D.E. 43 at 5; *see also Plastic Surgery*, 967 F.3d at 231 (finding certain claims preempted by § 1144(a) because they "involve[d] a plan-based duty" (citing *Ingersoll-Rand*, 498 U.S. at 140))).

Accordingly, the Court will **GRANT** Counterclaim Defendants' Motion as it relates to State law claims challenging Genesis's representation of its COVID-19 cash price.  The Court will therefore **DISMISS** all State law claims based on Genesis's COVID-19 cash price ***with prejudice***.[6]

2.      *Counterclaimants plausibly state an ERISA claim against Genesis only*[7]

A plan participant, beneficiary, or fiduciary may bring an action to obtain equitable relief pursuant to ERISA to redress "any act or practice which violates . . . the terms of the plan" or to enforce "the terms of the plan."  29 U.S.C. § 1132(a)(3)(B).  Counterclaim Defendants contend

---

[6] To the extent Counterclaimants bring State law claims based on the Cash Price Allegations as they relate to non-ERISA plans, those claims do not survive Counterclaim Defendants' Motion. *See infra* Section III.A.3.

[7] Counterclaimants make no argument that Count One is based on any allegations other than its Cash Price Allegations.  *See* Opp'n at 19 ("[Counterclaimants] adequately stat[e] a claim under ERISA given its theory that Counterclaim Defendants violated the CARES Act, the requirements of which are incorporated into ERISA.").  To the extent that Counterclaimants rely on any other factual theories to support their ERISA claim, they have not responded to Counterclaimants' arguments for dismissal.  Any such claims would therefore be waived.  *See 13 Hollister v. United States Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) (explaining that a party's failure to oppose an argument raised in a motion to dismiss constitutes waiver); *Ankele v. Hambick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."), *aff'd* 136 F. App'x 551 (3d Cir. 2005).

that because Counterclaimants neither identify the terms of the ERISA plans allegedly violated nor seek equitable relief, they do not state a claim for relief available under ERISA.  Mot. at  25–28.  Counterclaim Defendants further complain that Counterclaimants fail to plausibly plead any claim based on the Cash Price Allegations against Metropolitan.  The Court addresses each argument below and finds that Counterclaimants state an ERISA claim, but only against Genesis.  The Court will therefore **GRANT** the Motion as it relates to Metropolitan and will therefore **DISMISS** Metropolitan *without prejudice*.  The Court will **DENY** the Motion as it relates to Counts One and Ten against Genesis.

### i.    Counterclaimants identify ERISA plan terms

As discussed above, § 3202 of the CARES Act modifies the terms of ERISA plans and imposes an obligation on insurers to reimburse providers for COVID-19 testing.  *See supra* Section III.A.1.ii.  "[F]or an ERISA plan to accord with the statute, the COVID coverage requirement must [therefore] be deemed a part of the plan."  *Open MRI*, 2022 WL 1567797, at *6.  By virtue of identifying the relevant provision of the CARES Act (§ 3202), Counterclaimants have therefore identified the relevant terms of the ERISA plan that they seek to enforce.

### ii.    Counterclaimants state a claim for equitable relief

ERISA § 1132(a)(3)(B) limits available remedies to those "typically available in equity." *See Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 361 (2006) (quoting § 1132(a)(3)(B)).  Damages are not an available remedy.  *Id.*  Yet, "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 205 (2002) (quoting *Bowen v. Massachusetts*, 487 U.S. 870, 918–19 (1988) (Scalia, J., dissenting)).

Despite this general rule, there are some circumstances under which monetary remedies are available under § 1132(a)(3)(B).

For example, restitution can provide for the return of monetary funds, although "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. Whether a remedy is equitable or legal depends upon "the basis for the [claimant's] claim and the nature of the underlying remedies sought." *Id.* at 205. Claimants seeking to "recove[r] money to pay for some benefit the defendant had received from him" is considered an action at law, and not an action in equity. *Id.* at 213. Claimants may, under some circumstances, seek restitution in equity based upon an equitable lien, *see, e.g.*, *Sereboff*, 547 U.S. at 364, where there is an agreement "to convey a particular fund to another party," *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (quoting *Sereboff*, 547 U.S. at 363–64).

If, however, a party seeks recovery from another's general assets, the remedy sought is legal in nature, *even if equitable in basis*. *See id.* at 142–43 (explaining that "enforcement of an equitable lien by agreement" is not necessarily "equitable in nature"). To be equitable in nature, the remedy must seek "'specifically identifiable funds . . . within the possession and control' of the beneficiaries—not recovery from the beneficiaries' 'assets generally.'" *Id.* (quoting *Sereboff*, 547 U.S. at 362–63). Indeed, "[e]quitable remedies 'are, as a general rule, directed against some specific thing: they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets'" *Id.* at 145 (quoting 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941)).

Counterclaim Defendants argue that Counterclaimants have not adequately stated a claim for relief under § 1132(a)(3)(B) because their request to recoup overpayments is a suit for legal damages, not equitable relief. Counterclaimants respond that their ERISA claim is viable because

they seek relief based on an equitable lien that exists "in accordance with the ERISA plan provisions governing recoupment of overpayments." Opp'n at 21 (quoting Counterclaims ¶ 68). Counterclaimants further respond that the ERISA plans provide participants with the right to pursue overpayments and that participants have assigned that right to Counterclaimants. *Id.* ¶¶ 58–60.

Under Counterclaimants' theory, the action seeks "not to impose personal liability on [Genesis], but to restore to [Counterclaimants] particular funds or property in [Genesis's] possession."[8] *Knudson*, 534 U.S. at 215. At this stage, Counterclaimants have pled enough. ERISA imposes no "heightened pleading standard" for pleading a claim for equitable relief. *Me Metzgar*, 2016 WL 1554295, at *5 (permitting discovery to determine whether the ERISA claim sought equitable relief). And equity does not–in all circumstances–foreclose a claimant from seeking the return of specific funds paid in violation of plan terms. *See, e.g., Conn. Gen Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F. Supp. 3d 501, 511–12 (D. Conn. 2015) (construing a request for recoupment of overpayments "resulting from the defendants' billing practices," which violated plan terms, as "an equitable lien on particular property"). Although Counterclaim Defendants argue that Counterclaimants should identify the specific terms of the relevant ERISA plans, it is enough—albeit barely—that Counterclaimants allege that the terms of the ERISA plans provide a right to pursue overpayments and that this right to recovery has been assigned to Counterclaimants. There is no requirement for proof. Nor is there a requirement for probability.

---

[8] At the motion to dismiss stage, Counterclaimants need not identify a particular fund or property within Genesis's possession. *See Metzgar v. U.A. Plumbers and Steamfitters Local No. 22 Pension Fund*, No. 13-85, 2016 WL 1554295, at *5 (W.D.N.Y. Mar. 1, 2016). If, however, Counterclaim Defendants have dissipated the funds, Counterclaimants' ERISA claim would necessarily be barred. *See Greens v. Adornato*, No. 2-717, 2004 WL 213089, at *3 (S.D.N.Y. Feb. 4, 2004) (providing an opportunity for discovery into whether defendant had dissipated the funds to determine whether claimant's ERISA claim was viable).

14

Counterclaimants need only satisfy plausibility, and they have done so here with respect to Genesis.

### 3.    Counterclaimants do not state a claim under State law

To the extent Counterclaimants bring State law claims based upon the Cash Price Allegations as those allegations relate to non-ERISA plans, Counterclaimants fail to state a claim. As explained above, this Court "adopted Judge McNulty's reasoning in *Open MRI* and found that COVID-19 testing is treated as an ERISA requirement, obviating the need . . . to plead specific plan provisions. . . . *But that finding was limited to ERISA plans*." January 29, 2025 Opinion at 13 (emphasis added).  In the context of ERISA plans, Counterclaimants identify the relevant plan terms by virtue of relying on the CARES Act, which imposed specific obligations on Genesis.  *See supra* Section III.A.2.ii.  But in the context of non-ERISA plans, Counterclaimants do not reference any source of authority that imposes a requirement like that imposed by the CARES Act for ERISA plans.  Because the CARES Act did not modify non-ERISA plans, Counterclaimants cannot plead facts that would make their Cash Price Allegations actionable in the context of non-ERISA plans.

Counterclaimants therefore fail to indicate why publicly posting a cash price of $513 while charging $100 is actionable for *non-ERISA* plans.  The Court will therefore **GRANT** the Motion as it relates to the Cash Price Allegations and non-ERISA plans and **DISMISS** those claims ***with prejudice*** insofar as they are based on violations of the CARES Act.

### 4.    Counterclaimants plead no claim against Metropolitan based on the Cash Price Allegations

Nor have Counterclaimants satisfied their pleading requirements with respect to Metropolitan.  Counterclaimants allege only that Metropolitan and Genesis are owned by the same principal and that they acted in concert to assist Genesis's fraudulent conduct.  Opp'n at 36.  But the Cash Price Allegations are devoid of any mention of Metropolitan.  *See* Cash Price Allegations.

15

Counterclaimants plead no facts suggesting that Metropolitan had anything to do with either Genesis's public posting of $513 as its self-pay cash price for COVID-19 tests or Genesis's decision to charge self-pay customers only $100 for COVID-19 tests. *See id.* Counterclaimants therefore fail to provide any reason to infer that Metropolitan was involved with Genesis's purported scheme to bill Counterclaimants one price for COVID-19 tests while charging patients another.

Moreover, the only surviving claim based on the Cash Price Allegations is Counterclaimants' ERISA claim. Yet Counterclaimants do not allege that Metropolitan ever received any payments, let alone overpayments, from Counterclaimants. Nor do Counterclaimants identify any grounds, such as an equitable lien by agreement, that exists between them and Metropolitan. Counterclaimants cannot therefore seek relief against Metropolitan under ERISA. Insofar as Counterclaimants' claims against Metropolitan rely on the Cash Price Allegations (including Count Nine for conspiracy between Genesis and Metropolitan), those claims fail.

5. *Summary of surviving claims based on Cash Price Allegations*

In sum, the Court will **GRANT** the Motion as it relates to any State law claim based upon the Cash Price Allegations because such claims are either preempted by ERISA or insufficiently pled. The Court will therefore **DISMISS** Counts Two, Three, Four, Five, Six, Seven, Eight, and Nine insofar as they are based upon the Cash Price Allegations ***with prejudice***. The Court will also **GRANT** the Motion as it relates to Metropolitan and the Cash Price Allegations because Counterclaimants plead no facts permitting this Court to infer Metropolitan's involvement and because Counterclaims do not plead a claim for equitable relief against Metropolitan. The Court will therefore **DISMISS** all claims based upon the Cash Price Allegations as they relate to Metropolitan ***without prejudice***.

16

Because Counterclaimants adequately plead a violation of ERISA against Genesis, however, Counterclaimants may proceed with Count One against Genesis for overpayments under ERISA plans based on the Cash Price Allegations.  Counterclaimants may also proceed with Claim Ten for declaratory judgment to prevent Genesis from recovering for unpaid reimbursements pursuant to ERISA plans based on the COVID-19 test price.[9]  The Court will therefore **DENY** the Motion as it relates to the Cash Price Allegations for Count One and Count Ten against Genesis.

### B.    Duplicative Billing Allegations

Counterclaimants allege that Genesis, with Metropolitan's help, submitted bills to Counterclaimants that were duplicative of services that another laboratory or provider submitted for the same member, on the same date, and for the same COVID-19 test.  *See* Duplicative Billing Allegations.  Because the Duplicative Billing Allegations do not satisfy the particularity requirements of Rule 9(b), Counterclaimants fail to state a claim for relief.

To satisfy Rule 9(b)'s standard for falsity, Counterclaimants must plead "the who, what, when, where, and how of the events at issue."  *Majestic Blue Fisheries*, 812 F.3d at 307. Counterclaimants provide three examples of duplicative bills for COVID-19 testing.  Those examples include bills: (1) indicating in March 2020, that a patient received two COVID-19 tests, on the same date, for the same test, ordered by the same provider, but at two different locations: Genesis's laboratory and an unspecified laboratory, Counterclaims ¶ 46; (2), reflecting that a patient in May 2020 received two COVID-19 tests on the same date and for the same test, but two different locations: at Genesis's laboratory and an unspecified hospital, *id.* ¶ 47; and (3) indicating in December 2021, that a patient received two COVID-19 tests on the same date and for the same

---

[9] Counterclaimants' only ground for dismissal of Count Ten was that it was derivative of other improperly pled counts.  Because Count One is adequately pled, the Court therefore rejects dismissal of Count Ten on these grounds.

test, but at two different locations: Genesis's laboratory and a different unspecified laboratory, *id.* ¶ 48.

"Rule 9(b) requires [claimants] to identify the source of the allegedly fraudulent misrepresentation or omission," but it is not clear here which facility, if either, failed to provide the billed-for COVID-19 test. *In re Rockefeller*, 311 F.3d at 216. For example, Counterclaimants' allegation that a patient received two COVID-19 tests on the same day pursuant to the same provider's order comes closest to plausibly pleading that some fraud took place, but the claim still fails because Counterclaimants do not indicate which of the two laboratories failed to provide the billed-for service. Counterclaimants' other examples suffer from the same infirmity: none indicate which, if either, facility billed for a service it did not provide.

Counterclaimants also allege that they paid twice for orders because Genesis used the wrong place of service code and thereby misrepresented where the specimen was collected. *See, e.g.*, Counterclaims ¶ 24. Yet, in circumstances where one facility collects a specimen and another tests the specimen, Counterclaimants do not indicate why it was improper for both to bill Counterclaimants. Nor do Counterclaimants indicate how the place of service code bore on reimbursements provided.

Moreover, the only examples Counterclaimants provide of duplicative billing relate to COVID-19 tests taken at other laboratories or at a hospital. Counterclaimants allege fraud but the allegations provided are consistent with patients having simply tested twice for COVID-19 on the same day. Rule 9(b) requires more than just "facts that could plausibly have either a legal or illegal explanation." *See Omnicare*, 903 F.3d at 92.

Finally, Counterclaimants also fail to explain Metropolitan's role in the purported scheme. Rule 9(b) requires that claimants provide "facts indicating why the charges against defendants are

18

not baseless." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645–46 (3d Cir. 1997). Counterclaimants merely allege that Metropolitan, "upon information and belief," contracted with one of the three facilities that provided duplicative bills. Counterclaimants do not explain what Metropolitan did to advance the duplicative billing scheme or how. Counterclaimants presume that Metropolitan was involved, but that is also insufficient for Rule 9(b).

Because the Duplicative Billing Allegations lack the required level of specificity, the Court will **GRANT** the Motion as it relates to claims based on the Duplicative Billing Allegations and will **DISMISS** all such claims *without prejudice*.

### C.       Ancillary Testing Allegations

Counterclaimants allege that Genesis billed for needless expensive tests: (1) that resulted in no medical benefit to the patient; (2) "without a valid clinical determination that the [expensive test] was medically necessary"; (3) that were unsupported by necessary documentation; and (4) that were either not requested by a physician, were not performed on separate samples, and/or were not performed at all. Ancillary Testing Allegations. Counterclaimants state Genesis's overbilling practices caused Counterclaimants to overpay by "tens of millions of dollars." Counterclaims ¶ 54. Because Counterclaimants' Ancillary Testing Allegations also fail to satisfy Rule 9(b), the Court will **GRANT** the Motion as it relates to those claims and will **DISMISS** them *without prejudice*.

There are at least three problems with the Ancillary Tests Allegations. *First*, Counterclaimants bring their Counterclaims against both Genesis and Metropolitan, but they provide no explanation regarding what acts Metropolitan took to bill for "needlessly expensive" tests. Nor is Metropolitan mentioned in any of the relevant allegations. *See* Counterclaims ¶¶ 49–

19

54. Counterclaimants therefore fail to allege the "what" or "how" of the events at issue with respect to Metropolitan. *Majestic Blue Fisheries*, 812 F.3d at 307.

*Second*, Counterclaimants fail to specify what misrepresentations or deceptive practices Genesis allegedly engaged in. *See Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–86 (3d Cir. 2015) (finding plaintiff's allegations insufficiently pled under Rule 9(b) because plaintiffs failed "to identify any specific fraudulent statements, omissions, or misrepresentations"). Counterclaimants only go so far as to allege Genesis submitted claims for services that were either expensive, unnecessary, or lacking in supporting documentation, but Counterclaimants do not explain what documentation was required, what documentation was missing, who was responsible for submitting the documentation, or whether Genesis misrepresented the substance or contents of any documentation. Nor do Counterclaimants allege that Genesis misrepresented the necessity or price of the services billed for. Counterclaimants do suggest, but stop short of stating, that Genesis billed for services it did not provide. Counterclaimants lump this suggestion in as one of several explanations for why bills may have been improper. But they do not take the extra requisite step of alleging that Genesis did not provide any test that it billed for. Counterclaimants therefore fail to allege that Genesis engaged in any actionable conduct.

Finally, to the extent that Counterclaimants rely on some theory of implied misrepresentation, they identify no statutory, regulatory, or contractual authority requiring that a laboratory, like Genesis, comply with any of the limitations described. For example, Counterclaimants do not explain what obligation Genesis had to ensure or represent that the diagnostic tests rendered would provide a medical benefit for patients. Nor do Counterclaimants explain from where the requirement that the tests rendered be "medically necessary" or pursuant to "a valid clinical determination" stems from. Counterclaimants do not even allege that Genesis—

20

a diagnostic laboratory, not a medical facility—had the ability to make any determinations about clinical or medical need. *See, e.g.*, *United States ex rel. Groat v. Bos. Heart Diagnostics Corp.*, 296 F. Supp. 3d 155, 163 (D.D.C. 2017) ("[A] laboratory is not required to make an independent determination of medical necessity but rather may rely on the ordering physician's determination."). In addition, Counterclaimants fail to explain why any diagnostic test (such as a COVID-19 test) needed to have been performed "separately" or only pursuant to a physician's orders.

Accordingly, the Court will **GRANT** the Motion as to all claims based on the Ancillary Testing Allegations and will **DISMISS** those claims *without prejudice*.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT in part** and **DENY in part** Counterclaim Defendants' Motion. An appropriate Order accompanies this Opinion.

Dated: March 13, 2026

                                              Evelyn Padin, U.S.D.J.